UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:                                                                    Chapter 11
Buckskin Realty Inc.,                                          Case No. 1-13-40083-nhl

                     Debtor.
---------------------------------------------------------X
Buckskin Realty Inc.,
                  Plaintiff,

v.

Windmont Homeowners Association, Inc.,                    Adv. Pro. No.: 15-01004
Eva Halpern, *an individual*,
Allyson Phillips, *an individual*,
Edward I. Kaplan, *an individual*,
Young & Sommer, P.C., Cathy Hennessy,

                  Defendants.
---------------------------------------------------------X

## DECISION ON MOTIONS TO DISMISS

<u>Appearances</u>:

Frederick Cains
430 East 86th Street
New York, NY 10028
*Attorney for Plaintiff*

Greg D. Lubow
6026 Main Street
PO Box 839
Tannersville, NY 12485
*Attorney for Defendant Windmont Homeowners
Association, Inc.*

Barry G. Margolis
Abrams Garfinkel Margolis Bergson LLP
1430 Broadway
17th floor
New York, NY 10018
*Attorney for Defendants Windmont Homeowners
Association, Inc.; Eva Halpern; Cathy Hennessy*

Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
New York, NY 10005
*Attorney for Defendants Allyson Phillips
and Young/Sommer LLC.*

Deborah M. Isaacson
Rivkin Radler LLP
477 Madison Avenue
20th Floor
New York, NY 10022
*Attorney for Defendant Edward I. Kaplan*

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Plaintiff Buckskin Realty Inc. ("Buckskin"), as chapter 11 debtor-in-possession, brought this adversary proceeding seeking, *inter alia*, to vacate a state court foreclosure judgment and sale of two unimproved lots located in Greene County, New York, and retitle those lots to Buckskin's bankruptcy estate. The defendants are the Windmont Homeowners Association, Inc. (the "WHA"); Eva Halpern ("Halpern") and Cathy Hennessy ("Hennessy"), officers and directors of the WHA; Young/Sommer LLC,[1] a law firm, and one of its attorneys, Allyson Phillips ("Phillips"), who represented the WHA in state court foreclosure proceedings; and Edward Kaplan ("Kaplan"), the state court foreclosure referee (collectively, the "Defendants"). The Defendants filed separate motions to dismiss Buckskin's claims pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and on preclusion grounds. For the reasons set forth below, the Court dismisses all causes of action in the Amended Complaint except for the portion of the ninth cause of action against the WHA based on 11 U.S.C. § 547.[2]

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The papers create some confusion regarding the name of the law firm defendant. Buckskin named "Young & Sommer, P.C." as a defendant. The firm's reply papers alternatively use "Young/Sommer LLP, "Young & Sommer, LLC," and "Young/Sommer LLC." The Court notes that the firm's website refers to "Young/Sommer LLC" and provides no indication that the firm's name has changed since its 1999 founding, so this Decision refers to the firm as "Young/Sommer LLC." *See* About the Firm, Young/Sommer LLC, http://www.youngsommer.com/about-the-firm (last visited Sept. 4, 2016).

[2] Several parties have moved for sanctions in this Adversary Proceeding. The Court will address the sanctions motions separately from this Decision.

# BACKGROUND

Buckskin is a for-profit corporation and the successor of the sponsor of Windmont, a private, gated community located in Windham, New York. Am. V. Compl., ECF No. 5.[3] Relevant to this proceeding are two parcels (the "Lots") located within Windmont. Am. V. Compl., ECF No. 5. In or about July 2010, the Greene County Treasurer foreclosed on and obtained title to the Lots due to Buckskin's failure to pay its real property taxes. Am. V. Compl., ECF No. 5. Buckskin repurchased the Lots at the foreclosure sale in October 2010. Am. V. Compl., ECF No. 5. In April 2011, as a result of Buckskin's failure to pay common charge assessments due on the Lots, the WHA[4] filed two verified notices of lien ("NOLs") against the Lots, which were in addition to a first NOL it had filed against the Lots in September 2008. Defs.' Mot. to Dismiss, ECF No. 15; Am. V. Compl., ECF No. 5. The total value of the NOLs was $17,169, inclusive of $2,000 in attorney's fees. Am. V. Compl., ECF No. 5. In August 2011, the WHA, represented by Young/Sommer LLC, filed a foreclosure action against Buckskin in New York State Supreme Court, Green County, seeking to foreclose on the NOLs. Defs.' Mot. to Dismiss, ECF No. 15. The state court entered a default judgment against Buckskin when it failed to answer or otherwise respond to the action. Defs.' Mot. to Dismiss, ECF No. 15. Buckskin's principal, Rey Olsen ("Olsen"), appeared on behalf of Buckskin and sought unsuccessfully to obtain an order denying the WHA's motion for default judgment. Defs.' Mot. to Dismiss, ECF No. 14. Subsequently, the WHA obtained a default judgment and judgment of foreclosure and sale against Buckskin, which was entered on October 12, 2012. Am. V. Compl., ECF No. 5.

---

[3] Citations to "ECF" are to documents filed on the docket of this proceeding, identified by docket number.
[4] Buckskin bases certain of its arguments on the fact that the state court documents refer to the "Board of Directors of the Windmont Homeowners' Association, Inc." (the "Board"), rather than simply the WHA, as plaintiff. Pl.'s Opp'n Mot. Dismiss, ECF No. 21. Because the Court, as explained below, determines that this distinction is not material to the outcome of the instant motions, this Decision refers to actions by the WHA.

Days later, Buckskin moved to vacate the default judgment and judgment of foreclosure and sale, which motion was denied. Am. V. Compl., ECF No. 5. On January 8, 2013, shortly before Buckskin filed its bankruptcy petition, the WHA purchased the Lots for $58,389.11 at the scheduled foreclosure sale. Defs.' Mot. to Dismiss, ECF No. 15.

Buckskin's Amended Complaint is primarily an attack on the state court foreclosure judgment and sale. Buckskin argues that the foreclosure judgment is void because the WHA never registered as a condominium and thus lacked standing to file the NOLs and foreclose on the Lots. Am. V. Compl., ECF No. 5. Its subsequent supporting papers argue that the "Board of Directors of the Windmont Homeowners' Association, Inc." (the "Board"), the named plaintiff in state court, lacked standing to file NOLs and foreclose on the Lots because it "never had a legal existence." Pl.'s Opp'n Mot. Dismiss, ECF No. 21. Therefore, it alleges that the Board, as a "non-existent entity . . . had no legal authority to sue Buckskin or to obtain, through judicial process, title to real property." *Id.* Buckskin argues that the Board's alleged nonexistence renders the foreclosure judgment invalid and void. *Id.*

Buckskin additionally argues that the WHA, Halpern, and Hennessy fraudulently obtained the foreclosure judgment by misrepresenting to the state court that the WHA held liens against the property. According to Buckskin, those liens would have been extinguished by the 2010 foreclosure judgment in favor of Greene County. Am. V. Compl., ECF No. 5. Further, Buckskin contends that it, its counsel, and Olsen, never received the required notice of the WHA's foreclosure sale, and that foreclosure referee Kaplan improperly delegated to the WHA's counsel the responsibility of preparing and posting the notices of sale. Am. V. Compl., ECF No. 5. Buckskin also claims that Kaplan breached his fiduciary duty to Buckskin and engaged in a conspiracy to deprive Buckskin of the Lots. Am. V. Compl., ECF No. 5. Buckskin further argues

that Young/Sommer LLC and Phillips failed to comply with various state laws prior to and during the foreclosure proceeding, and that they conspired with Halpern and Hennessey to deprive Buckskin of the Lots. Am. V. Compl., ECF No. 5. The Defendants move to dismiss the Amended Complaint on several grounds.

## PROCEDURAL HISTORY

Buckskin filed a voluntary petition for chapter 11 relief on January 8, 2013, the same day as—but shortly after—the foreclosure sale. Am. V. Compl., ECF No. 5. Buckskin, and Olsen, acting as a *pro se* creditor, sought to have the petition deemed retroactively filed prior to the foreclosure sale, but this Court denied that request. *See In re Buckskin Realty, Inc.*, 525 B.R. 4 (Bankr. E.D.N.Y. 2015). Buckskin and Olsen separately moved in Buckskin's chapter 11 case for relief similar to that sought here, but the Court denied the relief on the ground that Bankruptcy Rule 7001 required the claims to be brought by adversary proceeding. *Id.* at 7 n.1. This adversary proceeding followed.

## LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Thus, while the facts alleged in the complaint are taken as true, favorable inferences drawn from those facts cannot be used to make the necessary jurisdictional showing. *Morrison*, 547 F.3d at 170; *Shipping Fin. Servs. Corp.*, 140 F.3d at 131. If "subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.

4

1986). Accordingly, in ruling on a motion pursuant to Rule 12(b)(1), the court is not limited to the facts in the complaint and may consider matters outside of the pleadings to resolve the jurisdictional issue. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [federal] court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113.

Under Rule 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complainants must allege enough facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion, the court may consider the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991). The court may also "consider documents incorporated by reference in the complaint and documents upon which a complaint relies heavily." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 136 (2d Cir. 2011). In deciding a motion under 12(b)(6), "a court must liberally construe the

complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Cerrato*, 504 B.R. 23, 29 (Bankr. E.D.N.Y. 2014).

Defendants the WHA, Halpern, and Hennessey move to dismiss on various grounds. They first argue that the Court lacks subject matter jurisdiction over most of the claims due to the *Rooker-Feldman* doctrine, which prevents federal courts, other than the Supreme Court, from reviewing state court decisions. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Further, they assert that this Court cannot otherwise hear the claims against them due to res judicata and collateral estoppel. For claims not so barred, said defendants contend that Buckskin's Amended Complaint fails to state a claim under Rule 12(b)(6), and that Buckskin fails to allege any wrongdoing by Halpern and Hennessey in their individual capacities. Defs.' Mot. to Dismiss, ECF No. 15.

Defendant Kaplan similarly moves to dismiss on the grounds that *Rooker-Feldman* and preclusion prevent this Court from hearing Buckskin's claims against him. Even if this Court could hear Buckskin's claims, Kaplan contends that he is afforded absolute immunity as a non-judicial officer and that, in any event, Buckskin has failed to state a claim against him. Def.'s Mot. to Dismiss, ECF No. 13.

Defendants Phillips and Young/Sommer LLC move to dismiss primarily on 12(b)(6) grounds, and further argue that insofar as Buckskin alleges that Phillips and Young/Sommer LLC perpetrated fraud on the state court, the state court was the appropriate forum to hear those claims. Defs.' Mot. to Dismiss, ECF No. 14.

As a threshold matter, the Court first considers whether it lacks subject matter jurisdiction over any of the claims under the *Rooker-Feldman* doctrine.

**DISCUSSION**

### 1. This Court Lacks the Power to Vacate the Foreclosure Judgment or Declare it Void

Buckskin's first three causes of action ask this Court to vacate the foreclosure judgment or declare it void. The first cause of action acknowledges that the *Rooker-Feldman* doctrine would ordinarily bar a federal court from vacating a state foreclosure judgment, but argues that this case is different because want of state court jurisdiction rendered the foreclosure judgment a "nullity *ab initio*," such that no state court order exists. As to the second cause of action, Buckskin alleges the WHA "concocted a fraudulent cause of action" by filing a complaint and obtaining a default judgment on liens it knew had expired, and therefore asks this Court to declare that the foreclosure judgment is void. The third cause of action alleges that the WHA failed to comply with CPLR[5] § 317 because it did not personally serve Buckskin with notice of the summons and complaint seeking foreclosure, and asks this Court to declare that the foreclosure judgment is void. Am. V. Compl., ECF No. 5. For the reasons that follow, *Rooker-Feldman* prevents this Court from vacating the foreclosure judgment or declaring it void on any of these grounds.

### a. The *Rooker-Feldman* Doctrine

In the Second Circuit, *Rooker-Feldman* applies when the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites district court review of the judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Green v.*

---

[5] All references to CPLR are to the New York Civil Practice Law and Rules. All other statutory references are to 11 U.S.C. et seq. ("Bankruptcy Code" or "Code") and all references to Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

*Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany Cty. Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

The key requirement in determining whether *Rooker-Feldman* applies is whether the federal court plaintiff complains of an injury *caused by* a state court judgment. *Hoblock*, 422 F.3d at 87. A party does not complain of an injury caused by a state court judgment when the injury existed prior to the state court proceedings, and thus *Rooker-Feldman* would not bar such a claim. *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).

To the extent that Buckskin seeks the return of the Lots, the *Rooker-Feldman* requirements are clearly met. First, Buckskin lost in state court. Second, it complains of an injury caused by the state court judgment—the loss of the Lots. Third, it invites this Court to review the state court judgment. Fourth, the state court judgment was rendered before federal proceedings commenced.

### b. "Void ab Initio Exception" to Rooker-Feldman

Buckskin argues that *Rooker-Feldman* does not prevent this Court from considering its attacks on the foreclosure judgment because the judgment is void *ab initio*. Am. V. Compl., ECF No. 5. Buckskin argues that the WHA lacked standing to file NOLs and foreclose on the Lots because the WHA was not registered as a condominium. *Id.* According to Buckskin, as a result of the WHA's failure to register as a condominium, the WHA lacked standing to ask the state court to foreclose on its liens and, accordingly, the state court judgment is void for lack of subject matter jurisdiction. *Id.*

In its opposition to the WHA's motion to dismiss, Buckskin changes its focus from the WHA's failure to register as a condominium to the fact that the state court papers refer to the "Board of Directors of the Windmont Homeowners' Association, Inc." as plaintiff. Pl.'s Opp'n

Mot. Dismiss, ECF No. 21. According to Buckskin, the Board lacked standing to file NOLs and foreclose on the Lots because it "never had a legal existence." *Id.* Therefore, it alleges that the Board, as a "non-existent entity . . . had no legal authority to sue Buckskin or to obtain, through judicial process, title to real property." *Id.* Buckskin argues that the Board's alleged nonexistence renders the foreclosure judgment invalid and that the Court can therefore declare it void without violating *Rooker-Feldman. Id.*

This Court disagrees. Second Circuit law is clear that a federal court, other than the Supreme Court, may not review a state court judgment even when the federal court litigant argues that the state court judgment is void *ab initio*. In a similar case in this district, a plaintiff mortgagor alleged that the lender-defendants engaged in "a pattern of submitting fraudulent and perjurious documents related to the . . . Judgment of Foreclosure and Sale in other courts, including in Bankruptcy Court." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). The plaintiff argued that, by filing fraudulent documents, "defendants committed a criminal fraud and violated her civil rights." *Id.* at 166. The *Swiatkowski* court determined that "[w]ere this Court to accept plaintiff's arguments regarding defendants' allegedly fraudulent actions, the Court's ruling 'would effectively declare the state court judgment fraudulently procured and thus void.'" *Id.* at 167 (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002)). The court concluded that the state court was the proper venue to challenge the foreclosure action, and that *Rooker-Feldman* barred the plaintiff's claims insofar as she sought to undermine the foreclosure judgment. *Id.* at 167–68; *see also Ashby v. Polinksy*, No. 06-CV-6778 (DLI), 2007 WL 608268, at *2 (E.D.N.Y. Feb. 22, 2007) (holding that *Rooker-Feldman* precluded the district court from hearing the plaintiff's claim that sought a declaration that the state court's judgment was unconstitutional and void), *aff'd*, 328 F. App'x 20 (2d Cir.

2009); *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 10 (E.D.N.Y. 2005) ("This Court is not the proper court to review the decisions of the New York State Supreme Court.").

More recently, in *Vossbrinck v. Accredited Home Lenders*, the Second Circuit reaffirmed the principle that *Rooker-Feldman* bars federal courts from reviewing state court decisions, even when the federal plaintiff alleges that the state court decision is void. *Vossbrinck v. Accredited Home Lenders*, 773 F.3d 423, 427 (2d Cir. 2014). In *Vossbrinck*, the plaintiff sought to have a foreclosure judgment declared void, alleging that the defendants engaged in fraud during a foreclosure action by misrepresenting their standing to seek foreclosure and submitting fraudulent title documents. *Id.* To the extent that the plaintiff asked the federal court to grant him title to the property, the court determined that "[t]his would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error," thereby violating *Rooker-Feldman*. *Id.*

Likewise, this Court has determined that a debtor could not avoid the application of *Rooker-Feldman* based on the argument that the plaintiff's lack of standing to foreclose on a mortgage resulted in a void judgment. *In re Lake Charles Retail Dev. LLC*, No. 13-01477 (NHL), 2014 WL 4948234, at *7 (Bankr. E.D.N.Y. Sept. 30, 2014) ("[A] debtor who claims in federal court that a judgment of foreclosure is void because of alleged errors by the state court complains of an injury from a state-court judgment, and invites review and rejection of that judgment."); *see also In re Richmond*, 513 B.R. 34, 39 (Bankr. E.D.N.Y. 2014) (finding that the debtor's assertions that foreclosing party lacked standing or that said party's counsel misled the state court did not subject judgment to collateral attack in the bankruptcy court).

Although some courts have recognized a void *ab initio* exception to *Rooker-Feldman*, this exception is limited to situations in which the harm complained of falls within the repository

of jurisdiction arising by virtue of the bankruptcy, such as violations of the automatic stay or discharge injunction. *In re Homer-Radtke*, 305 B.R. 846, 851 (N.D. Ill. 2004) (citing *In re Pavelich*, 229 B.R. 777, 783 (B.A.P. 9th Cir. 1999)). This exception is narrow, and does not permit attacks on a state court judgment simply because a federal plaintiff alleges that the state judgment is "void." *Id.*

Second Circuit law is clear that the state court is the appropriate forum for any challenge to a foreclosure judgment, even one asserting that the judgment is void or that the plaintiff lacked standing to foreclose. Accordingly, this Court may not review the state court foreclosure judgment against Buckskin.

### c. *Fraud and the Rooker-Feldman Doctrine*

Buckskin also alleges that the WHA engaged in various fraudulent acts, such as filing NOLs despite actual and constructive knowledge that the subject liens had been extinguished. Am. V. Compl., ECF No. 5. Furthermore, according to Buckskin, the state court lacked jurisdiction over the foreclosure action due to the WHA's various failures to comply with state procedural law and because the WHA concocted a "fraudulent cause of action." *Id.* As stated previously, *Rooker-Feldman* prevents this Court from overturning the state court judgment on either of these grounds, as such a determination would require this Court to review the foreclosure judgment and determine that it was issued in error. *See Vossbrinck*, 773 F.3d at 427; *see also Gonzalez v. Deutsche Bank Nat'l Trust Co.*, 632 F. App'x 32, 33 (2d Cir. 2016) (summary order) (citing *Vossbrinck,* 773 F.3d at 427); *Feinstein v. Chase Manhattan Bank*, No. 06-CV-1512 (JFB)(ARL), 2006 WL 898076, at *2 (E.D.N.Y. Apr. 4, 2006).

Although the Second Circuit has recognized a possible *Rooker-Feldman* fraud exception,[6] it only applies where a plaintiff does not seek to overturn a state court judgment but rather seeks damages on an alternative theory of relief. *See Vossbrinck*, 773 F.3d at 427. For example, an exception to *Rooker-Feldman* may exist where a judgment is procured by fraud and the federal plaintiff seeks damages rather than vacatur of the state court judgment. *See Lake Charles*, 2014 WL 4948234, at *7 (discussing *Goddard v. Citibank, N.A.*, No. 04-CV-5317 (NGG)(LB), 2006 WL 842925, at *4 (E.D.N.Y.  Mar. 27,2006)); *see also Babb v. CapitalSource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015); *Marshall v. Grant*, 521 F. Supp. 2d 240, 244–45 (E.D.N.Y. 2007) (holding that *Rooker-Feldman* did not bar certain of the plaintiff's claims because the plaintiff argued that the source of his injury was the alleged perjury, fraud, and misrepresentations, not the state court judgment itself). For each of its first three causes of action against the WHA, Buckskin seeks to overturn the state court judgment or to have this Court declare it void. These causes of action must therefore be dismissed because they depend upon this court voiding, vacating or otherwise undermining the state court judgment, which this Court may not do under *Rooker-Feldman*. *See In re Richmond*, 513 B.R. at 39–40.[7]

---

[6] The Court refers to this exception as "possible" because the Second Circuit has "never recognized a blanket fraud exception to Rooker Feldman." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 505 (S.D.N.Y. 2016) (quoting *Kropelnicki*, 290 F.3d at 128).

[7] Subsequent to the Court marking the instant motions submitted for a written decision, Buckskin sought leave to file a supplemental complaint alleging, among other things, that a recent district court decision established law that would control the outcome of this adversary proceeding. *See* Mot. Leave to File Suppl. Compl., ECF No. 83. Buckskin cites *Fequiere v. Tribeca Lending*, No. 14-CV-812 (RRM)(LB), 2016 WL 1057000, at *4 (E.D.N.Y. Mar. 11, 2016), *appeal docketed*, No. 16-1150 (2d Cir. Apr. 12, 2016). In *Fequiere*, the district court held that *Rooker-Feldman* did not bar the plaintiff's claims insofar as they did not require the district court to review the state court judgment. *Id.* at *4. The district court instead dismissed the plaintiff's claims based on the doctrine of res judicata and her failure to adequately plead the elements of her remaining claims. *Id.* at *11–*12. The district court's analysis makes clear that its refusal to dismiss the plaintiff's claims based on *Rooker-Feldman* was due to the fact that it would not be required to sit in review of the state court judgment, and that her complaint "[did] not request reinstatement of her title to the Property, but rather requests that defendants be held liable for 'damages,' 'prejudgment interest' in the amount of the loss she sustained, and an injunction." *Id.* at *4. Consistent with this analysis, this Court, pursuant to *Rooker-Feldman*, dismisses Buckskin's claims to the extent that Buckskin seeks vacatur of the state court judgment. Buckskin also argues, in its supplemental papers, that CPLR § 3215(b) requires this Court to vacate the foreclosure sale because the amount of the default judgment exceeded the amount demanded in the complaint. *See* Mot. Leave to File Suppl. Compl., ECF No. 83. CPLR § 3215(b) provides that a default

### d. Res Judicata

Even if *Rooker-Feldman* did not prevent this Court from reviewing the state court foreclosure judgment, res judicata would prevent such a review. Because a New York state court rendered the prior judgment, New York's res judicata doctrine controls. *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008). Consequently, res judicata bars litigation of any claims that were or could have been asserted in the prior action. *Fequiere v. Tribeca Lending*, No. 14-CV-812 (RRM)(LB), 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016). It also bars defenses that might have been litigated in the prior action, whether or not those defenses were actually raised. *Swiatkowski*, 745 F. Supp. 2d at 171. In New York, res judicata requires a showing that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the party against whom res judicata is invoked or its privy;[8] and (3) the claims asserted were or could have been asserted in the previous action. *Fequiere*, 2016 WL 1057000, at *5 (citing *Swiatkowski*, 745 F. Supp. 2d at 171). A default judgment is a judgment on the merits. *In re 231 Fourth Avenue Lyceum, LLC*, 513 B.R. 25, 32 (Bankr. E.D.N.Y. 2014); *Feeny v. Licari*, 131 A.D.2d 539, 540 (N.Y. App. Div. 2d Dep't 1987). Privity is not limited to successors in interest, but includes "those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action." *Fequiere*, 2016 WL 1057000, at *6 (quoting *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-CV-1441 (JS)(WDW), 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010)).

---

judgment "shall not exceed in amount . . . that demanded in the complaint." However, this Court has previously determined that *Rooker-Feldman* precludes setting aside a foreclosure judgment, even if entered in violation of CPLR § 3215. *In re 231 Fourth Avenue Lyceum, LLC*, 513 B.R. 25, 31–32 (Bankr. E.D.N.Y. 2014).

[8] *See also* David D. Siegel, *N.Y. Prac.* § 224 (5th ed. 2014–16) ("[Res judicata's] main predicate is that the party against whom it is being invoked has already had its day in court . . . .").

New York law applies a broad "transactional approach" to res judicata, meaning that once a claim is finally determined, all other claims arising out of that transaction are barred, even if they are based on different theories or seek a different remedy. *Specialized Realty Servs., LLC v. Maikisch*, 123 A.D.3d 801, 802 (N.Y. App. Div. 2d Dep't 2014). Furthermore, "[the] doctrine also applies to defenses that could have been litigated, including defenses to a foreclosure." *Fourth Avenue Lyceum*, 513 B.R. at 32–33 (quoting *Yeiser*, 535 F. Supp. 2d at 421).

As with *Rooker-Feldman*, some New York courts have recognized a fraud exception to res judicata. *See In re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y. 2010). New York law allows collateral attacks on judgments procured by extrinsic, but not intrinsic, fraud. *Id.* Extrinsic fraud involves interference with the right to a full and fair hearing, whereas intrinsic fraud involves the underlying issue in the first lawsuit, such as misrepresentations to the court. *Id.* Examples of extrinsic fraud involve threats of physical harm and misrepresentations that an action will be discontinued. *See Fourth Avenue Lyceum*, 513 B.R. at 33. While such fraud may be collaterally attacked, the remedy for intrinsic fraud must be exercised in the first lawsuit. *In re Slater*, 200 B.R. 491, 496 (E.D.N.Y. 1996) (quoting *Altman v. Altman*, 150 A.D.2d 304, 306–07 (N.Y. App. Div. 1st Dep't 1989).

Here, even if *Rooker-Feldman* did not deprive this Court of jurisdiction over Buckskin's first three causes of action, they would be barred by res judicata. For each, the three res judicata elements are met. First, the judgment of foreclosure is a default judgment, and is therefore considered to be on the merits. Second, the judgment involved Buckskin, the party against whom res judicata is invoked. Third, these claims all arose out of the same transaction—the foreclosure—and Buckskin could have asserted them in that action.

Res judicata also bars Buckskin's fourth, fifth, and sixth causes of action against the WHA. These causes of action ask this Court to reduce or nullify the assessments that the WHA charged Buckskin leading up to the foreclosure. Here too are res judicata's three elements met.

As discussed above, in New York, once a claim is finally determined, all claims and defenses relating to the original transaction are barred. Here, each of these causes of action either was or could have been argued in the foreclosure action. Therefore, Buckskin's attempt to litigate them here is denied.

Res judicata also bars Buckskin's seventh cause of action, against the WHA. Buckskin alleges that the WHA improperly imposed liens on the Lots. Buckskin additionally argues that the WHA was not registered as a condominium, but nevertheless imposed liens under § 339 of New York's Condominium Act. Buckskin claims that these allegedly improper liens tortiously interfered with its business by "clouding the titles" to the Lots, thereby depriving Buckskin of the profits it could have earned by selling the properties at fair market value. Because the claims raised by the seventh cause of action could have been asserted in the state court foreclosure action, they are barred here.

Nor does the fraud exception to res judicata apply to any of the causes of action against the WHA. Buckskin's allegations against the WHA (*e.g.*, that it failed to comply with the CPLR; that it did not personally serve Buckskin with the summons and complaint seeking foreclosure; that it obtained a default judgment based on extinguished liens) constitute intrinsic fraud and, as such, cannot be collaterally attacked in this Court.

### 2. New York Judiciary Law § 487 Claim Against Phillips and Young/Sommer LLC

In its first cause of action against Phillips and Young/Sommer LLC, Buckskin alleges that these defendants violated Judiciary Law § 487 through their alleged deceitful conduct when they represented the WHA during the foreclosure proceedings. Among the deceits alleged are the preparation of a perjurious and defective affidavit for execution by Halpern, and the fact that these attorneys proceeded under the Condominium Act when they were aware that their client had no authority to do so.

Section 487(1) of New York's Judiciary Law provides that an attorney is guilty of a misdemeanor and liable for treble damages in a civil action when he or she engages in deceit or collusion "with the intent to deceive the court or any party." N.Y. Jud. Law § 487(1). Civil relief and treble damages are generally warranted only when the attorney "has engaged in a 'chronic, extreme pattern of legal delinquency.'" *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 228 (N.Y. App. Div.1st Dep't 1999) (quoting *Wiggin v. Gordon*, 115 Misc. 2d 1071, 1077 (N.Y. Civ. Ct. Queens Cty. 1982)). Relief under this statute is "not lightly given," *Chowaiki & Co. Fine Art Ltd. v. Lacher*, 115 A.D.3d 600, 601 (N.Y. App. Div. 1st Dep't 2014) and requires "egregious conduct or a chronic and extreme pattern of behavior on the part of the defendant attorneys that caused damages." *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (N.Y. App. Div. 1st Dep't 2015) (quoting *Savitt v. Greeberg Traurig*, LLP, 126 A.D.3d 506, 507 (N.Y. App. Div. 1st Dep't 2015)). Allegations under this statute must be stated with particularity and "will be dismissed if allegations as to scienter are conclusory or factually insufficient." *Id.* Significantly, a party's "remedy for a violation of Section 487 stemming from an attorney's actions in a litigation lies exclusively in that lawsuit itself . . . not a second plenary action." *All. Network, LLC v. Sidley*

*Austin LLP*, 43 Misc. 3d 848, 858 (N.Y. Sup. Ct. N.Y. Cty. 2014) (quoting *Yalkowsky v. Century*

*Apts. Assocs.*, 215 A.D.2d 214, 215 (N.Y. App. Div. 1st Dep't 1995)).

Buckskin's causes of action against Phillips and Young/Sommer LLC are therefore not

properly before this Court, as § 487 claims must be brought in the initial forum. Further, even if

they were properly before this Court, the allegations do not suggest "egregious conduct" or a

"chronic and extreme pattern of behavior." Consequently, the § 487 allegations must be

dismissed as they should have been brought in state court and, in any event, fail to state a claim.

### 3. Second Cause of Action Against Phillips and Young/Sommer LLC; First Cause of Action Against Halpern and Hennessey

Buckskin's second cause of action against Phillips and Young/Sommer LLC and a

portion of its first cause of action against Halpern and Hennessey allege conspiracy to use state

law to convert Buckskin's property.[9] However, New York law does not recognize a tort of

conversion of real property. *Garelick v. Carmel*, 141 A.D.2d 501, 502 (N.Y. App. Div. 2d Dep't

1988) ("An action sounding in conversion does not lie where the property involved is real

property."). Nor does it recognize civil conspiracy to commit a tort as an independent cause of

action, so the claim falls with the underlying tort. *Scott v. Fields*, 85 A.D.3d 756, 757 (N.Y. App.

Div. 2d Dep't 2011). This claim is therefore dismissed.

Buckskin also alleges that Halpern and Hennessey engaged in various misdeeds before

and during the WHA's foreclosure action. In addition to the alleged conspiracy and related acts,

Buckskin asserts that Halpern and Hennessy breached their fiduciary duty to Buckskin and that

---

[9] In its Amended Complaint, Buckskin cites 28 U.S.C. § 1985(3). No such section of the United States Code exists, so the Court assumes that Buckskin was referring to 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights, which Buckskin referred to in the fact section of its Amended Complaint. This statute provides a private cause of action for damages against conspirators who deprive another of his or her rights or privileges under the law. *See id.* However, Buckskin has not alleged facts sufficient to show that this statute is applicable to this case.

they tortiously interfered with Buckskin's contracts and business. These claims, too, must fail. At the outset, for a board member to be held individually liable, a plaintiff must "plead with specificity independent tortious acts by each individual defendant." Vincent Di Lorenzo, *N.Y. Condo. & Coop. Law* § 12:6 (2d. ed. 2015) (citing *Kuang v. Bd. of Managers of Biltmore Towers Condo. Ass*'n, 22 Misc. 3d 854, 873 (N.Y. Sup. Ct. Westchester Cty. 2008)). Buckskin's conclusory assertions that Halpern and Hennessy engaged in an overall scheme to convert the Lots for their own benefit fail to meet this pleading standard. In addition, to establish tort liability against an individual director, a plaintiff must allege that a board member committed tortious conduct outside of his or her role as a board member. *See Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 56 (N.Y. App. Div. 1st Dep't 2012); *Konrad v. 136 E. 64th St. Corp.*, 667 N.Y.S.2d 324, 325–26 (N.Y. App. Div. 1st Dep't 1998); *see also Meadow Lane Equities Corp. v. Hill*, 63 A.D.3d 699, 700 (N.Y. App. Div. 2d Dep't 2009) (dismissing a breach of fiduciary duty claim against an individual director because the plaintiff failed to allege that the defendant had committed a breach independent of her role as a board member). Here, Buckskin fails to allege that Halpern or Hennessey engaged in any tortious conduct outside of their roles as WHA directors. This cause of action against them is therefore dismissed.

### 4. **Bankruptcy Code Claims**

#### a. *11 U.S.C. § 544*

Buckskin's eighth cause of action against the WHA alleges that the state court foreclosure judgment can be avoided as an undocketed judgment under § 544 of the Bankruptcy Code. Section 544 allows the trustee to "avoid any transfer of property of the debtor" that is voidable by a hypothetical judicial lien creditor or hypothetical bona fide purchaser for value as of the commencement of the case. *See* 11 U.S.C. § 544(a)(1), (3). Properly filed judgments of

foreclosure "take[] precedence over any subsequent transfer with respect to the debtors'

property, with no exception for a subsequent judicial lien of a hypothetical creditor under 11

U.S.C. § 544(a)(1)." *In re Cerrato*, 504 B.R. 23, 32 (Bankr. E.D.N.Y. 2014) (quoting *In re

Mosello*, 190 B.R. 165, 169 (Bankr. S.D.N.Y. 2005)). In addition, a hypothetical bona fide

purchaser under section 544(a)(3) "is presumed to have examined all properly recorded

instruments and to have made a thorough inquiry into the facts those instruments disclose," and

accordingly may be charged with constructive notice of all matters on the record. *In re Heavey*,

549 B.R. 1, 8 (Bankr. E.D.N.Y. 2016).

Here, the state court determined that the WHA had a valid lien and granted the WHA a

default judgment and judgment of foreclosure and sale against Buckskin, which was entered on

October 12, 2012. Am. V. Compl., ECF No. 5. Because *Rooker-Feldman* and res judicata

prevent this court from reviewing that judgment, Buckskin may not avoid the foreclosure

judgment under section 544(a)(1). Furthermore, Buckskin was on constructive notice of the

docketed judgment, so cannot avoid the judgment as a good faith purchaser under section

544(a)(3). In sum, Buckskin cannot avoid the foreclosure sale pursuant to this section since the

lien was deemed valid and perfected prior to the commencement of Buckskin's bankruptcy case.

### b. 11 U.S.C. § 545

Part of Buckskin's ninth cause of action against the WHA seeks to avoid the judgment of

foreclosure under § 545. This section allows the trustee to avoid statutory liens. 11 U.S.C. **§** 545.

It applies to liens that arise solely by force of statute, and not to liens that arise by agreement. *See*

11 U.S.C. § 101(51), (53).

The WHA's liens at issue did not arise by statute but rather through a contractual

agreement. Upon acquiring property in Windmont, purchasers consent to the WHA's declaration,

19

which provides that unpaid assessments "shall be the personal obligation of an Owner and shall constitute a lien upon the Owner's Lot and/or Home." *See* Defs.' Mot. To Dismiss, ECF No. 14-12. Section 545 is therefore inapplicable to these facts and this claim is dismissed for failure to state a claim.[10]

### c. *11 U.S.C. § 547*

The other portion of Buckskin's ninth cause of action against the WHA seeks to avoid the WHA's foreclosure judgment as a preference under 11 U.S.C. § 547. Section 547(b) allows the trustee to

> avoid any transfer of an interest of the debtor in property:
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made ... on or within 90 days before the date of the filing of the petition . . .
> (5) that enables a creditor to receive more than such creditor would receive if
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received the payment of such debt to the extent provided by the provisions of this title.

11. U.S.C. § 547(b). Elements (1)–(4) are satisfied on the instant facts. The foreclosure sale was a "transfer of an interest of the debtor in property." *See* 11 U.S.C. § 101(54). It resulted in a benefit to the WHA, and was predicated on a foreclosure judgment against Buckskin on account of antecedent debt owed the WHA. Furthermore, the sale occurred hours before Buckskin's bankruptcy petition—well within the 90 day limit—and during a time in which Buckskin's insolvency is presumed pursuant to § 547(f). 11 U.S.C. § 547(f) ("[T]he debtor is presumed to

---

[10] Buckskin itself contends that the liens are not statutory, and bases its N.Y. Real Prop. Law § 339-aa argument on this fact. See Pl.'s Opp'n Mot. Dismiss, ECF No. 21 ("[A]ll liens between the parties were consensual, not statutory, and as such could not be filed.").

have been insolvent on and during the 90 days immediately preceding the date of the filing of the

petition."). The only remaining question is therefore under subsection (5): whether the WHA

received more than it would have received in a hypothetical liquidation.

This is not easily settled, however, as courts are divided as to whether subsection (5) is

satisfied when a secured creditor purchases collateral at a foreclosure sale for less than its fair

market value, as is the case here. Some courts have relied on the Supreme Court's decision in

*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994), which held that the price obtained at a

properly conducted, noncollusive foreclosure sale is deemed to be a "reasonably equivalent

value" for purposes of § 548. Though § 547 does not use the "reasonably equivalent" language,

these courts apply *BFP*'s reasoning to that section to find that a regularly conducted foreclosure

sale precludes preference-based avoidance. *See, e.g.*, *In re Pulcini*, 261 B.R. 836 (Bankr. W.D.

Pa. 2001); *In re FIBSA Forwarding, Inc.*, 230 B.R. 334, 341 (Bankr. S.D. Tex. 1999), *aff'd*, 244

B.R. 94 (S.D. Tex. 1999). Other courts have found *BFP* inapplicable in the § 547 context, and

deemed foreclosures avoidable even when the sale is noncollusive and otherwise compliant with

state law. *See, e.g.*, *In re Whittle Dev., Inc.*, 463 B.R. 796 (Bankr. N.D. Tex. 2011); *In re

Villarreal*, 413 B.R. 633 (Bankr. S.D. Tex. 2009); *In re Andrews*, 262 B.R. 299 (Bankr. M.D. Pa.

2001). The question has not been resolved in the Second Circuit.

The facts pleaded place this claim squarely within this uncertain area. Buckskin's

Amended Complaint indicates an assessed value of $48,000 for lot 15 and $49,000 for lot 16.

Am. V. Compl., ECF No. 5, and further states that Olsen estimates the market value of each lot

at $300,000, *Id.* At the sale, the WHA purchased the Lots for $58,389.11. Even presuming that

the assessed values are accurate, the WHA paid less than the value of the Lots. Thus,

determining whether the WHA received more than it would have under Chapter 7 is ultimately a question of selecting one of the two approaches.

Accordingly, while Buckskin's ninth cause of action is perhaps inartfully pleaded, in accepting Buckskin's allegations as true and drawing all reasonable inferences in its favor, the Court is not prepared to dismiss the portion of this cause of action based on § 547 in light of the unsettled law noted above. Accordingly, the WHA's motion to dismiss Buckskin's § 547 claim is denied.

### d.  11 U.S.C. § 548

Plaintiff's tenth and eleventh causes of action against the WHA seek to avoid the transfer of the lots under § 548(a)(1)(B) of the Bankruptcy Code.[11] Generally, § 548(a)(1)(B) allows a trustee to "avoid any transfer . . . of an interest of the debtor in property" incurred by the debtor within two years of the petition if two conditions are satisfied. the first is that the debtor must have "voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C.§ 548(a)(1)(B)(i). As for the second condition, § 548 requires that a debtor

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B)(ii).

---

[11] The tenth cause of action simply cites "§ 548" and the eleventh "§ 548(a)(1)." However, the allegations indicate that Buckskin is proceeding more specifically under § 548(a)(1)(B).

Despite this, Buckskin's tenth and eleventh causes of action make no reference to any of the elements enumerated in subsection (B)(ii). And here, unlike under § 547, insolvency is not presumed, meaning that subsection (B)(ii)(I) is not automatically satisfied. Buckskin has therefore failed to adequately plead this subsection.

However, even if Buckskin had properly pleaded an element under subsection (a)(1)(B)(ii), it fails to show that the price obtained at the sale was less than "reasonably equivalent" to the value of the Lots. In *BFP*, the Supreme Court held that § 548's "reasonably equivalent value" is not the same as "fair market value," and concluded that "a reasonably equivalent value" in the context of foreclosed property is the price actually received at the foreclosure sale, so long as the sale complied with relevant state foreclosure law. *BFP*, 511 U.S. at 545.

Applying the *BFP* standard, the relevant inquiry is whether the sale complied with New York law. In the event of noncompliance, "[a]ny irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price was not reasonably equivalent to the property's actual value at the time of the sale." *BFP*, 511 U.S. at 545–46. Such an irregularity rebuts the presumption of reasonably equivalent value, and the transfer may be avoided if the price was not reasonably equivalent to the price that would have been received under a properly conducted sale. *Id.*

The WHA foreclosed under New York law, pursuant to both the terms of the WHA's Declaration and the Condominium Act.[12] Defs.' Mot. to Dismiss, ECF No. 15. A homeowners'

---

[12] In its Amended Complaint, Buckskin contends that the WHA unlawfully proceeded with the foreclosure under § 339-aa even though it was not registered as a condominium. However, for the reasons discussed above, *Rooker-Feldman* compels this Court to accept the validity of the state court foreclosure judgment. In any event, New York law is clear that the WHA could proceed with the foreclosure action pursuant to its Declaration and Bylaws. *See Bd.*

association may derive its authority to foreclose from its declaration and bylaws. *See Bd. of Dirs. of House Beautiful at Woodbury Homeowners Ass'n, Inc. v. Godt*, 96 A.D.3d 983, 985 (N.Y. App. Div. 2d Dep't 2012). The WHA's declaration provides that a "lien for past due Assessments may be foreclosed by the Association in accordance with the laws of the State of New York, in like manner as a mortgage on real property." Halpern Aff., ECF No. 15-3. Similarly, § 339 of New York's Condominium Act allows a condominium to foreclose liens for common charges "in like manner as a mortgage of real property." N.Y. Real Prop. Law § 339-aa.

The Court must next determine if Buckskin's claims regarding the impropriety of the foreclosure proceedings state a plausible claim to invalidate the sale under New York's Real Property and Proceedings Law ("RPAPL") § 231, which governs foreclosure sales. Buckskin alleges that the foreclosure sale failed to comply with RPAPL § 231 because the referee, Kaplan, did not personally prepare, post, and publish the notice of sale, but rather delegated these responsibilities to attorneys for the WHA. Buckskin further alleges that Kaplan never filed an affidavit by anyone attesting, based on personal knowledge, that he or she posted the notice of sale in Catskill, New York, where the sale was to take place. The only affidavit filed in this regard stated that it was "based on discussions with other individuals acting on behalf of Windmont." Am. V. Compl., ECF No. 5.[13] Finally, Buckskin alleges that the WHA's failure to mail a notice of sale to Olsen individually prejudiced him because had he known about the sale earlier, he could have filed Buckskin's petition sooner in order to halt the foreclosure. Buckskin

---

*of Dirs. of House Beautiful at Woodbury Homeowners Ass'n, Inc. v. Godt*, 96 A.D.3d 983, 985 (N.Y. App. Div. 2d Dep't 2012).

[13] In their papers, the parties disputed the timeliness of this challenge. Although challenges under § 231 must be brought within one year of sale, § 108 of the Bankruptcy Code provides that when a statute of limitations has not expired pre-petition, the trustee may bring the action within two years after the order for relief. 11 U.S.C § 108. In voluntary bankruptcy cases, the filing of the petition constitutes the order for relief. *In re Howe Grain Inc.*, 176 B.R. 515, 520 (Bankr. D. Neb. 1994). Here, the sale occurred on January 8, 2013. Buckskin brought this adversary proceeding on January 7, 2015. The challenge is thus timely.

therefore seeks a judgment setting aside the foreclosure sale "for lack of due process." Am. V. Compl., ECF No. 5.

Sales conducted pursuant to RPAPL § 231 will generally only be set aside upon a showing of prejudice to the parties involved. N.Y. Real Prop. Acts. Law § 231(6); *see Key Bank of New York, N.A. v. Wan Dev. Corp.*, 210 A.D.2d 655, 655 (N.Y. App. Div. 3d Dep't 1994). Pursuant to CPLR § 2003, a court "may set the sale aside for a failure to comply with the requirements of the civil practice law and rules as to the notice, time or manner of such sale, if a substantial right of a party was prejudiced by the defect." CPLR § 2003. A sale conducted without proper notice will be vacated only upon a showing that the lack of notice prejudiced a party's right to participate in the sale. *In re 824 S. E. Boulevard Realty, Inc.*, No. 12-01028, 2012 WL 3561981, at *8 (Bankr. S.D.N.Y. Aug. 17, 2012); *Marine Midland Bank, N.A. v. Landsdowne Mgmt. Assocs., Inc.*, 193 A.D.2d 1091 (N.Y. App. Div. 4th Dep't 1994), *appeal denied*, 82 N.Y.2d 656 (1993); *see also Amresco New England II, LP v. Denino*, 283 A.D.2d 599, 599–600 (N.Y. App. Div. 2d Dep't 2001) (reversing lower court's vacatur of a foreclosure sale because improper notice did not necessitate vacatur where respondent made no showing that the improper notice affected a party's ability to attend the sale, *i.e.*, that a party's substantial right was prejudiced).

Buckskin alleges prejudice in that Olsen failed to receive timely notice of the sale, which purportedly prevented him from filing a bankruptcy petition on behalf of Buckskin prior to the sale. Even if the Court accepts as true Buckskin's allegations of improper notice, "the failure to give proper notice of a sale, as required by RPAPL 231, is a mere irregularity, not a jurisdictional defect." *Amresco*, 283 A.D.2d at 599.  Absent a showing of prejudice to a party's right to participate in the sale, a "mere irregularity" is insufficient to allow the Court to set aside the sale.

*Marine Midland Bank*, 193 A.D.2d at 1091; *Key Bank*, 210 A.D.2d at 655. Buckskin has made

no showing that Olsen was in any way prevented from participating in the sale. Furthermore,

Olsen clearly had actual notice of the sale, given Buckskin's retention of counsel five days prior

the sale in an attempt to adjourn it and his efforts to file a bankruptcy petition on behalf of

Buckskin on the day of the sale. *See Marine Midland Bank,* 193 A.D.2d at 1091 (reversing a

lower court ruling that set aside a foreclosure sale when there was no showing of prejudice to the

mortgagee's right to participate in the sale and mortgagee's attorney had actual notice of the

sale); *White v. Magee*, 85 A.D.2d 858, 858 (N.Y. App. Div. 3d Dep't 1981) (refusing to set aside

foreclosure sale on several grounds, including defendant's actual notice of the sale).

Accordingly, Buckskin's tenth and eleventh causes of action against the WHA are dismissed.

### 5. Judicial Immunity and the Cause of Action Against Referee Kaplan

Buckskin also brings a cause of action against referee Kaplan, alleging that Kaplan

breached a "special duty" owed to it, that he conspired to deprive Buckskin of its property, and

that he engaged in various acts of misconduct related to his activities in carrying out the

foreclosure sale. Buckskin claims that Kaplan lacks judicial immunity due to this "non-judicial

act" of allowing agents of the WHA to perform his official functions under RPAPL § 231.

Nonjudicial officers, such as referees, are entitled to absolute immunity when their duties

"have an integral relationship with the judicial process." *Green v. Kadilac Mortg. Bankers, Ltd.*,

936 F. Supp. 108, 115 (S.D.N.Y. 1996). Referees acting in excess of their authority are still

entitled to judicial immunity, even when their acts are alleged to have been malicious and

corrupt. *Falkoff v. Donovan*, 245 A.D.2d 541, 541 (N.Y. App. Div. 2d Dep't 1997). It is only

when they act "in the clear absence of all jurisdiction" that they lose their immunity. *Id.*

Allegations of bad faith and conspiracy will not defeat this immunity for action taken pursuant to court orders. *Green*, 936 F. Supp. at 115.

Here, Buckskin's claims against Kaplan are insufficient to overcome Kaplan's immunity. Buckskin's allegations against Kaplan include that he improperly delegated to the WHA's counsel various responsibilities regarding the notices of sale, that he failed to obtain or review documentation authorizing Phillips to contract to purchase the lots, and that he delayed the issuance of a referee's deed. At worst, these allegations suggest that Kaplan performed his duties improperly. Nothing in Buckskin's Amended Complaint suggests that Kaplan acted "in the clear absence of all jurisdiction." *See Falkoff*, 245 A.D.2d at 541. Buckskin therefore fails to state a claim against Kaplan.

## CONCLUSION

For the reasons stated above, the Court grants each of the Defendants' motions to dismiss the Amended Complaint, except for the portion of the ninth cause of action against the WHA based on § 547. A separate order will issue.



**Dated: September 23, 2016**
**Brooklyn, New York**

_____
**Nancy Hershey Lord**
**United States Bankruptcy Judge**

27