UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

Buckskin Realty Inc.,                            Chapter 11
                                                 Case No. 1-13-40083-nhl

                    Debtor.

------------------------------------------------------------x

Buckskin Realty Inc.,

                              Plaintiff,         Adv. Pro. No. 1-15-01004-nhl

          v.

Windmont Homeowners Association, Inc.,
Eva Halpern, *an individual,*
Allyson Phillips, *an individual,*
Edward I. Kaplan, *an individual,*
Young & Sommer, P.C.,
Cathy Hennessy,

                              Defendants.

------------------------------------------------------------x

## OPINION AND ORDER ON MOTION FOR RECONSIDERATION

Appearances:

Frederick Cains
430 East 86th Street
New York, New York 10028
*Attorney for Plaintiff*

Barry G. Margolis
Abrams Garfinkel Margolis Bergson LLP
1430 Boradway
17th floor
New York, NY 10018
*Attorney for Defendants Windmont
Homeowners Association, Inc.; Eva Halpern;
Cathy Hennessy*

Rey Olsen
41-26 27th Street
Long Island City, New York 11101
*Pro Se*

Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
New York, New York 10005
*Attorney for Defendants Allyson Phillips and
Young & Sommer, P.C.*

Jonathan B. Bruno
Rivkin Radler LLP
477 Madison Ave.
20th floor
New York, NY 10022
*Attorney for Defendant Edward I. Kaplan*

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is plaintiff Buckskin Realty Inc.'s ("Buckskin") motion for reconsideration (the "Reconsideration Motion") of the Court's decision entered on September 23, 2016 (the "Decision"), ECF No. 102, which dismissed all but one of Buckskin's causes of action in its amended complaint (the "Amended Complaint"), ECF No. 104. For the reasons articulated below, Buckskin's Reconsideration Motion is denied.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The Court assumes the parties' familiarity with the underlying facts, and will only briefly address the events leading up Buckskin's Reconsideration Motion. Buckskin brought the instant adversary proceeding in order to, in part, vacate a state foreclosure judgment and sale of two unimproved lots located in Green County, New York, and retitle those lots to its bankruptcy estate. The Amended Complaint made various claims against defendants Windmont Homeowners Association ("Windmont"); Eva Halpern ("Halpern") and Cathy Hennessy ("Hennessy"), who are officers of Windmont; Young & Sommer LLC ("Young/Sommer") and Allyson Phillips ("Phillips"), who represented Windmont in the foreclosure proceedings; and Edward Kaplan ("Kaplan"), the state court foreclosure referee (collectively, the "Defendants").

The Defendants filed separate motions to dismiss Buckskin's claims under Fed. R. Civ. P. 12(b)(1) and (6), which the Court granted to the extent that all but Buckskin's claim against Windmont under 11 U.S.C. § 547 were dismissed. In large part, the Decision found that the

*Rooker-Feldman* doctrine barred the Court from vacating the state foreclosure judgment, and denied Buckskin's first three causes of action for that reason.

Buckskin has now moved for the Court to reconsider its Decision on nine separate grounds, all pursuant to Federal Rule of Civil Procedure 59.[1] Responses were filed by Windmont, Halpern, and Hennessy, ECF No. 111; Young/Sommer and Phillips, ECF No. 112; and Kaplan, ECF No. 109. In essence, the responses filed argue that Buckskin has impermissibly used its Reconsideration Motion as a vehicle for presenting arguments that it had not previously raised, and that are nevertheless without merit. Buckskin replied to each response in advance of a hearing on the Reconsideration Motion, and in each instance defended its use of new cases and arguments. *See* ECF Nos. 113–15. After the hearing on the Reconsideration Motion held on December 6, 2016, Buckskin filed six additional letters, mostly related to its argument that *Rooker-Feldman* does not bar this Court's review of the state foreclosure judgment.

### Discussion

*A. Standard for Reconsideration Under Fed. R. Civ. P. 59*

Rule 59 permits a party to make a motion "to alter or amend a judgment," Fed. R. Civ. P. 59(e), and is properly invoked only where: (1) there is an intervening change of controlling law; (2) new evidence becomes available; or (3) there is a need to correct a clear error or prevent manifest injustice, *In re Hassan*, 527 B.R. 97, 100 (Bankr. E.D.N.Y. 2015) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), *cert. denied*, 506 U.S.

---

[1] Federal Rule of Civil Procedure 59 is made applicable here through Federal Rule of Bankruptcy Procedure 9023, which provides:

> Except as provided in this rule and Rule 3008, Rule 59 F. R. Civ. P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

Fed. R. Bankr. P. 9023.

820 (1992)); *In re CPJFK, LLC*, 496 B.R. 65, 67 (Bankr. E.D.N.Y. 2011) (quoting *United States v. Sessa*, Nos. 92-CR-351(ARR), 97-CV-2079(ARR), 2011 WL 867175, at *1 (E.D.N.Y. Mar. 8, 2011)). The standard under Rule 59 is strict; under the "clear error" basis, raised here, reconsideration will generally be denied unless a party can show that a court "overlooked controlling decisions or factual matters that were put before [it] on the underlying motion." *Lichtenbrg v. Besicorp Gr. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (quoting *Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), *aff'd sub nom. Fulani v. Bentsen*, 35 F.3d 49 (2d Cir. 1994)); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A party may not use Rule 59 as a means to "repeat[] old arguments previously rejected," or to "mak[e] new arguments that could have been previously advanced." *CPJFK*, 496 B.R. at 67 (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)); *see also Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686(MKB), 2015 WL 1475853, at *2 (E.D.N.Y. Mar. 31, 2015) ("It is thus 'well-settled' that a motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple."'" (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012))).

Buckskin's argument, made both in its papers and during the hearing, that it may submit *any* controlling precedent for the first time in the context of a motion for reconsideration, is simply not supported by the case law. *See* Rep. Br. to Windmont 2, ECF No. 113; Dec. 6 Tr. 20:4–5, ECF No. 174. The party moving under Rule 59 must point to a controlling decision that was "overlooked," *see Henderson v. City of New York*, No. 05-CV-2588 (FB)(CLP), 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been 'put before [the court] on the underlying motion . . . and which,

had they been considered, might have reasonably altered the result before the court.'" (quoting *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000))), or, at the very least, that directly affects the validity of an argument already raised *before* a decision is issued, *see Analytical Surveys*, 684 F.3d at 52–53 (rejecting a motion for reconsideration raising an argument not previously advanced).

### B. Substantive Grounds for Reconsideration

#### 1. Appeal Exception to Rooker-Feldman

In the Decision, the Court found that the *Rooker-Feldman* doctrine left it without jurisdiction to entertain Buckskin's first three causes of action. *See* Decision 7–12, ECF No. 102. The Court applied the test for *Rooker-Feldman* used in the Second Circuit since the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005): (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment;" (3) the plaintiff "must invite district court review and rejection of that judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)); *see* Decision 7–8, ECF No. 102. Application of the test led the Court to conclude that its requirements were satisfied on the facts presented. *See* Decision 8, ECF No. 102.

Buckskin disputes the applicability of the doctrine in its first argument for reconsideration. Buckskin contends that the Supreme Court's decisions in *Exxon Mobil* and, more recently, in *Lance v. Dennis*, 546 U.S. 459 (2006), mandate that *Rooker-Feldman* has no application where a state court decision was appealed prior to commencement of the federal suit. As Buckskin explains, those circumstances fall within a settled exception to *Rooker-Feldman*: the appealed state

court judgment is not final, and the state and federal litigations are therefore parallel. *See Lance*, 546 U.S. at 464 (citing *Exxon Mobil*, 544 U.S. at 292 (noting that *Rooker-Feldman* does not apply to "parallel" state and federal litigation)). Buckskin then states that because it appealed the state court's judgment denying its motion to vacate the foreclosure judgment on January 2, 2013, six days prior to filing its bankruptcy petition, the relief sought in this adversary proceeding falls within this exception.

The Court declines Buckskin's invitation to reconsider its application of *Rooker-Feldman* on those grounds. As set out above, Rule 59 is not a vehicle for "making new arguments that could have been previously advanced." *CPJFK*, 496 B.R. at 67. Nevertheless, that is precisely what Buckskin has done here. The majority of the case law cited in support of Buckskin's position was available to it in advance of the Decision's publication.[2] Despite this, Buckskin did not raise this argument in its original responses to the Defendants' motions to dismiss, or at any time before the Decision was issued. Accordingly, it may not do so for the first time now. *See Analytical Surveys*, 684 F.3d at 52.

Even if Buckskin's new argument were not barred for this reason, its position would still not warrant reconsideration of the Decision's *Rooker-Feldman* analysis. Despite Buckskin's repeated claims to the contrary, the cases that it brings to the Court's attention do not support its

---

[2]    The Decision was entered on the docket on September 23, 2016. Buckskin's argument relies heavily on *Exxon-Mobil*, 544 U.S. 280 (2005); *Lance*, 546 U.S. 459 (2006); and *Buczek v. Tirone*, 15-CV-28S, 2016 WL 1625773 (W.D.N.Y. Apr. 25, 2016), *aff'd*, 2016 WL 7436497 (2d Cir. Dec. 22, 2016). While the Second Circuit's decision in *Buczek* was unavailable to Buckskin, that decision does *not* discuss *Rooker-Feldman*, and therefore does not aid its argument in any way, as will be discussed *infra* note 5.
    Furthermore, it appears that Buckskin is presenting the state court notice of appeal (the "Notice of Appeal" or the "Notice") for the first time in support of the Reconsideration Motion. See Mot. for Recon., Ex. A, ECF No. 104-3. A review of the docket in this adversary proceeding shows that, at the very least, the Notice of Appeal was not attached to any of Buckskin's responses to the Defendants' motions to dismiss, and Windmont's response to the Reconsideration Motion makes a representation to that effect. Windmont et al. Opp. to Plaintiff's Mot. to Recon. 4. Regardless of whether the Notice of Appeal itself was raised or mentioned prior to the Reconsideration Motion, however, the argument now made based on that Notice, and the cases provided in support of that argument, were not.

position.[3] Nothing in either *Exxon Mobil* or *Lance* explicitly dictates that, to use Buckskin's language, "only the final judgment of the highest court of a state" is subject to *Rooker-Feldman*. *See* Dec. 11, 2017 Letter 1, ECF No. 119. *Lance*, the more recent of the two cases, addresses the issue of privity between parties and its relation to *Rooker-Feldman*. *See* 546 U.S. at 462–63. While that decision notes in dicta that, under the doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments," 546 U.S. at 463, the Supreme Court does not ascribe to that statement the meaning Buckskin attempts to give it, and, importantly, nor does the Second Circuit,[4] *see Watley v. Katz*, 631 F. App'x 74, 75 (2d Cir. 2016); *Davis v. Baldwin*, 594 F. App'x 49, 50 (2d Cir. 2015).

Though some courts have interpreted the Supreme Court's language in *Exxon Mobil* as limiting *Rooker-Feldman*'s application to cases in which "all state proceedings—including appeals—have ended before the action commences," the Second Circuit has not adopted that interpretation. *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346 (E.D.N.Y. 2010) (collecting cases). To the contrary, the Second Circuit has either reserved judgment on the issue of whether *Rooker-Feldman* applies when a state court appeal is pending, *Gabriele v. Am. Home Mortg. Servicing*, 503 F. App'x 89, 92 (assuming, without deciding, that *Rooker-Feldman* applies even if a state court appeal is pending); *see also Davis*, 594 F. App'x at 50 (citing *Gabriele*, 503 F. App'x at 92), or has, without comment, applied the doctrine irrespective

---

[3] Regardless of when Buckskin initially raised this argument, its burden on a motion for reconsideration is to present overlooked *controlling* authority. *See Lichtenberg*, 28 F. App'x at 75. To the extent that it has presented argument based on law from other circuits, or from other districts, the Court finds those arguments to be unavailing.

[4] While dicta in *Lance* does instruct that "Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments," this direction is most easily understood as a reference to state *preclusion* doctrines, which are at issue in the case. *See Lance*, 546 U.S. at 466. It would be a stretch to conclude from this sentence, as Buckskin does, that *Lance* "held [that] Rooker-Feldman applies only to 'final judgments' under each state's definition of that term." Jan. 10, 2017 Letter 1, ECF No. 124.

of a pending appeal, *see Swiatkowski v. New York*, 160 F. App'x 30, 31–32 (2d Cir. 2005).[5] When

the Second Circuit *has* addressed the issue of final judgments in the context of *Rooker-Feldman*,

it has done so only to distinguish them from interlocutory judgments, which are exempt from

*Rooker-Feldman*'s jurisdictional bar, and not at issue here. *See, e.g., Davis*, 594 Fed. App'x at 50

(finding that a family court's *temporary* order of removal was not barred by *Rooker-Feldman*);

*Green*, 585 F.3d at 100 (same).

While the Second Circuit has not confronted the issue directly, it has been specifically

addressed by the Eastern District of New York. In *Caldwell v. Gutman, Mintz, Baker &*

*Sonnenfeldt, P.C.*, the court rejected the argument that a pending appeal suspends the application

of *Rooker-Feldman*. 701 F. Supp. 2d at 347–48. The court explained:

> Despite *Exxon Mobil's* use of the phrase "after the state proceedings ended," that decision makes clear that *Rooker-Feldman* prevents federal courts (other than the Supreme Court) from "review[ing] and revers[ing] unfavorable state court *judgments*." This purpose would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district review of that judgment. Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment. This is what *Rooker-Feldman* prohibits.

---

[5] Furthermore, the Second Circuit's recent decision in *Buczek v. Tirone* does nothing to change this analysis. This is because—and this point could not be clearer—*it does not address Rooker-Feldman. See Buczek*, 16-1670, 2016 WL 7436497 (2d Cir. Dec. 22, 2016). Despite this, Buckskin has gone out of its way to urge that the Second Circuit's decision in *Buczek* not only discusses *Rooker-Feldman*, but that it is now a seminal case within the Second Circuit's *Rooker-Feldman* jurisprudence. In one instance, Buckskin states that "[t]he 2nd Circuit [sic] decision in the <u>Buczek</u> case . . . completely changed the landscape in the 2nd Circuit [sic] regarding the Rooker-Feldman doctrine." Jan. 10, 2017 Letter 1, ECF No. 124. Later, it goes so far as to refer to the decision in *Buczek* as having established the "*Buczek* Rule" with respect to the doctrine. *See* Feb. 14, 2017 Letter 16, ECF No. 128. This is simply not the case. The district court decision below did address *Rooker-Feldman*, and found it inapplicable because, unlike here, the state court judgment of foreclosure and sale post-dated the filing of the federal action. *See* 15-CV-28S, 2016 WL 1625773, at *2–4 (W.D.N.Y. Apr. 25, 2016). On appeal, however, the Second Circuit addressed *only* res judicata. 2016 WL 7436497, at *1. Indeed, it does not appear that the issue of *Rooker-Feldman* was before the circuit court, and there is not a single mention of *Rooker-Feldman* in that court's summary order. The Second Circuit's decision in *Buczek* presents no justification for reconsideration of the Court's application of *Rooker-Feldman*, and Buckskin's insistence to the contrary does not, and will not, change that.

*Caldwell*, 701 F. Supp. 2d at 347–48 (citations omitted); *see also Ward v. Bankers Tr. Co. of Cal.,*

*N.A.*, No. 09-CV-1943 (RRM)(LB), 2011 WL 1322205, at *5–6 (E.D.N.Y. March 29, 2011)

(affirming *Caldwell*'s conclusion). Because cases from within this circuit that have considered the

issue have, with good reason, rejected Buckskin's position, and because Buckskin failed to raise

the argument in advance of the Decision's issuance, the Court must adhere to its application of

*Rooker-Feldman* in the Decision. Buckskin's first ground for reconsideration is therefore denied.[6]

## 2. *Lack of Personal Service*

Buckskin's second argument in favor of reconsideration regards its allegation that it was

not personally served in the state court action. *See* Mot. for Recon. 7, ECF No. 104-1. This was

the underlying allegation in the Amended Complaint's third cause of action. *See* Am. Comp. 43–

44, ECF No. 5. In the Decision, and as noted above, the Court explained that it declined to entertain

that cause on the basis of *Rooker-Feldman*. The Decision further explained that, even if *Rooker-*

*Feldman* were not applicable, the cause of action would have been barred by res judicata, and not

covered by the "extrinsic" fraud exception to that rule. *See* Decision 14–15, ECF No. 102.

Buckskin's argument that the Court should reconsider the Decision with respect to this

issue appears to be that, because it has shown *Rooker-Feldman* to be inapplicable, the only bar to

---

[6] There are two cases from this District that must be noted, as they contain dicta that lends support to Buckskin's position—*Council v. Better Homes Depot, Inc.*, No. 04 CV 5620(NGG)(KAM), 2006 WL 2376381, at *8 (E.D.N.Y. Aug. 16, 2006) ("[T]he state court proceeding ends for *Rooker-Feldman* purposes after a plaintiff allows the time for appeal to lapse without filing an appeal in state court.") and *Goddard v. Citibank, N.A.*, No. 04 CV 5317 (NGG)(LB), 2006 WL 842925, at *4 n.1 (E.D.N.Y. Mar. 27, 2006) ("[T]he state court proceeding ended for *Rooker-Feldman* purposes when plaintiff allowed the time for appeal to lapse without filing an appeal in state court."). However, despite providing itself several opportunities to do so, Buckskin did not cite *Council* or *Goddard*. But even if it had, the more-recent *Caldwell* and *Ward* cases have adopted the opposite approach based on a more thorough analysis. *See Ward*, 2011 WL 1322205, at *5–6 ("[T]his Court concurs with those courts that do not confine application of the *Rooker–Feldman* doctrine to situations where federal plaintiffs have exhausted their state-court appeals."); *Caldwell*, 701 F. Supp. 2d at 347–48.

considering the merits of the claim is res judicata; and, contrary to the Court's finding, res judicata does not apply because lack of personal service is extrinsic fraud.

The primary problem with Buckskin's argument is that it was not raised prior to the Decision's issuance, but relies entirely on law available prior to that point. Even if it were raised, however, because *Rooker-Feldman* applies, Buckskin has still not stated a basis to reconsider this issue. The Decision explained that res judicata was an additional reason that the Court could not entertain the third cause of action; it was not the only bar. Thus, as no reason has been presented to alter the Decision's application of *Rooker-Feldman*, the Court is still without jurisdiction to hear the claim. For this reason, the Court must decline to reconsider the Decision on this point.

### 3. N.Y. C.P.L.R.[7] 3215(b)-Related Claims

Buckskin's third and fourth arguments for reconsideration are both related to N.Y. C.P.L.R. 3215(b), which Buckskin raised in two motions for leave to file a supplemental complaint (the "Motions for Leave"). ECF Nos. 83, 87. The Court addressed this claim in the Decision—even though it was first raised after the motions to dismiss were marked submitted for decision—and found that *Rooker-Feldman* barred it from considering the claim. *See* Decision 12 n.7, ECF No. 102.

Now, Buckskin makes two related claims about the Court's treatment of the issue, which will be considered in turn. First, Buckskin explains that, because its claim under N.Y. C.P.L.R. 3215(b) arose after the complaint in the foreclosure action was filed, it is not barred by res judicata. Mot to Recon. 10, ECF No. 104-1. In support of this argument, Buckskin offers a single block-quote, without any further context, from *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Thus, as a matter of logic, when the second action concerns a transaction occurring after

---

[7] All references to N.Y. C.P.L.R. are to the New York Civil Practice Law and Rules.

the commencement of the prior litigation, claim preclusion generally does not come into play."). Mot to Recon. 10, ECF No. 104-1.

The Court declines to reconsider the Decision on this ground. As an initial matter, this is the first time that Buckskin is raising the argument, and it does not appear that anything prevented it from being raised in the Motions for Leave, or, for that matter, before then. The argument is therefore inappropriate in the context of a motion to reconsider. *See Gem Fin. Serv.*, 2015 WL 1475853, at *2. Even if that were not the case, however, the argument is directed only at res judicata, which was not the reason that the Court declined to entertain the proposed cause of action. Again, the Court found that it was barred from considering the N.Y. C.P.L.R. 3215(b) claim on *Rooker-Feldman* grounds.

This brings the Court to Buckskin's fourth argument for reconsideration, which addresses why it believes *Rooker-Feldman* was inappropriately applied. *See* Mot. to Recon. 10–11, ECF No. 104-1. As Buckskin explains, in full, "The Decision, at page 13, Fn 7 [sic], relies upon *In re 231 Fourth Avenue Lyceum, LLC*, 513 B.R. 25, 31–32 (Bankr. E.D.N.Y. 2014). CPLR 3215(b) [sic] was not at issue and the case is therefore inapposite." *Id.* at 11.

Reconsideration is not warranted on this argument, which does not meet the stringent standard set by Rule 59. Buckskin has not presented overlooked, controlling law. *See Henderson*, 2011 WL 5513228, at *1. Instead, it has offered an almost out-of-hand rejection, without explanation, of case law upon which the Court relied. But such dissatisfaction with the Decision is not a basis for reconsideration under Rule 59. *See Pierre v. Planet Auto., Inc.*, 13-CV-675 (MKB), 2016 WL 6459617, at *3 (E.D.N.Y. Oct. 31, 2016) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial

resources." (quoting *Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013))).

### 4. Windmont's Tortious Interference

In the Decision, the Court dismissed Buckskin's seventh cause of action against Windmont on res judicata grounds. *See* Decision 15, ECF No. 102. Buckskin now argues that the underlying claim there—tortious interference based on a violation of New York Condominium Law § 339— is not barred by res judicata because it would have been a permissive counterclaim under New York law, and such claims are not subsequently precluded. In support of this claim, Buckskin points to *In re Ridgmour Meyer Props., LLC*, No. 08-13143 (SMB), 2016 WL 5395836 (Bankr. S.D.N.Y. Sept. 27, 2016), which held that res judicata did not bar or resolve an objection to the reasonableness of attorney's fees under 11 U.S.C. § 502(b)(4) when the reasonableness of such fees was not raised as a counterclaim in a state court malpractice action. It also cites *Pace v. Perk*, 81 A.D.2d 444 (N.Y. App. Div. 2d Dep't 1981) ("Where a defendant may interpose a claim as a counterclaim but fails to do so, the doctrine of res judicata in the sense of claim preclusion does not apply to prevent him from subsequently maintaining an action on that claim." (citations and footnotes omitted)).

As this is the first time that Buckskin raises this argument, or the cases that support it, it does not merit reconsideration of res judicata's application in the Decision. *CPJFK*, 496 B.R. at 67. Nevertheless, even if Buckskin had raised these issues, it is not clear that they would be meritorious here. This Court, construing New York law on this issue, has found that where the interests established in the prior action would be impaired by the second, res judicata bars the second action irrespective of New York's permissive counterclaim rule. *See In re Merhi*, 518 B.R. 707, 713–14 (Bankr. E.D.N.Y. 2014) (Craig, C.J.). The Decision found that res judicata would bar

Buckskin's seventh cause of action, and the analysis in *Merhi* supports that conclusion. The permissive counterclaim rule cited by Buckskin does not alter the Decision's analysis, and therefore provides no basis for reconsideration of this issue.

### 5. Collateral Estoppel

Buckskin's sixth ground for reconsideration is that "collateral estoppel has no application when the state court judgment was entered on default." Mot. to Recon. 13, ECF No. 104-1. This is perplexing, since the Decision neither applied nor considered collateral estoppel as a basis for dismissing any of Buckskin's claims. Therefore, Buckskin's statement establishes no ground for reconsideration.

### 6. Treble Damages under N.Y. Judiciary Law § 487

Buckskin's seventh basis for reconsideration is that the Court misapplied N.Y. Judiciary Law § 487 in finding both that it required a showing of a "chronic, extreme pattern of legal delinquency," and that a claim arising under the law must be brought in the initial forum. Decision 16–17, ECF No. 102. These arguments do not warrant reconsideration.

The requirement of a "pattern of legal delinquency" was raised by Young/Sommer in its motion to dismiss, *see* Y/S Mem. of Law 13, ECF No. 14-30, and Buckskin responded, at that time, by citing to *Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008). The Court did not overlook Buckskin's argument on this point; rather, it disagreed. Now, Buckskin again cites to *Amalfitano*, but to no other controlling law. *See* Mot. to Recon. 14–15, ECF No. 104-1. Under the circumstances, this is an attempt to revisit the issue, rather than to bring overlooked, controlling law to the Court's attention, and must therefore be rejected. *See Lichtenberg*, 28 F. App'x at 75 ("A motion for reconsideration is not an opportunity for the moving party 'to argue those issues

already considered when a party does not like the way the original motion was resolved.'" (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996))).

As for whether Buckskin could bring the claim here, outside the initial forum, it does not appear that Buckskin raised this issue, even after it was discussed by Young/Sommer. Buckskin was presented with an opportunity to argue this point in advance of the Decision being issued, but neglected to do so, and it may not do so now. However, even if the point were contested initially, the Court does not see any reason to reconsider its application in the Decision.

### 7. Referee as Independent Contractor

Buckskin's eighth ground for reconsideration is that the Court erred in finding that Kaplan was entitled to immunity based on the New York Court of Appeals decision in *O'Brien v. Spitzer*, 7 N.Y.3d 239 (2006). This particular case does not raise any basis for reconsideration, however, as the argument it supports was not raised in Buckskin's defense against Kaplan's initial motion. But even if the issue were raised, it would still be insufficient, as *O'Brien* is, on its face, inapposite to the question of whether an appointed referee is entitled to judicial immunity. At issue there was whether a referee appointed in a state foreclosure proceeding was an independent contractor, and therefore not entitled to indemnification from the State. *O'Brien*, 7 N.Y.3d at 241. The issue of judicial immunity simply does not arise. While creative reasoning might lead one to discover a connection between the two issues, the time to raise this sort of analysis and argument, if ever, was while the underlying motion was pending—not after.

### 8. Individual Liability of Halpern and Hennessy

Buckskin's final argument in favor of reconsideration relates to its first cause of action against Halpern and Hennessy, for "[t]ortious interference with contracts, business and breach of fiduciary duty[, and] conversion." Am. Compl. 54, ECF No. 5. The Court dismissed this claim,

finding that Buckskin had "fail[ed] to allege that Halpern or Hennessy engaged in any tortious conduct outside of their roles as [Windmont] directors." Decision 18, ECF No. 102.

Buckskin now claims that the Court erred in "overlooking that their acts of personally signing and filing false notice of liens and affidavits imposes tortious liability on them." Mot. to Recon. 17, ECF No. 104-1. The theory under which they could be liable, Buckskin continues, is that, "if a director or officer commits, or participates in the commission of, a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby." *Neptune Estates, LLC v. Big Poll & Son Const., LLC*, 961 N.Y.S.2d 896, 908 (Sup. Ct. Kings Cty. 2013).

This argument must be rejected as a basis for reconsideration. Buckskin did place these factual allegations before the Court in the Amended Complaint. There, Buckskin stated, with respect to the actions of Halpern and Hennessy, that the former "filed her perjurious affidavit in furtherance of a conspiracy," while the latter "signed two Notices of Lien that were filed with the Greene County Clerk on 5/19/2011, document numbers 333490 and 333493 as her role in the conversion conspiracy." Am. Compl. ¶¶ 162–163, ECF No. 5. From these allegations, Buckskin argued that the two were engaged in a scheme meant to serve "their own personal benefit." Am. Compl. ¶ 171, ECF No. 5. It did not use these facts to suggest that Halpern and Hennessy should be liable in their capacity as officers, however, and the Court did not consider this because the theory was not advanced. For that reason, Buckskin may not present the theory for the first time now. *Gem Fin. Serv. Inc.*, 2015 WL 1475853, at *2.

Nevertheless, even if it were proper to consider Buckskin's new theory here, the Court does not find that reconsideration of its conclusion is warranted because Buckskin failed to plead the tortious conduct of Halpern and Hennessy with requisite specificity. The allegations are conclusory and could not support liability in either context.

## Conclusion

Based on the foregoing discussion, Buckskin's Reconsideration Motion is denied.

**IT IS SO ORDERED.**



**Dated: March 24, 2017**
      **Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**