UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                                          Chapter 11

Buckskin Realty Inc.,                                                                 Case No. 1-13-40083-nhl

               Debtor.
------------------------------------------------------------X
Buckskin Realty Inc.,

               Plaintiff,

v.

Windmont Homeowners Association, Inc.,                          Adv. Pro. No.: 15-01004-nhl
Eva Halpern, an individual,
Allyson Phillips, an individual,
Edward I. Kaplan, an individual,
Young & Sommer, P.C., Cathy Hennessy,

               Defendants.
------------------------------------------------------------X

## DECISION

APPEARANCES:

| | |
|---|---|
| Frederick Cains, Esq. | Barry G. Margolis, Esq. |
| 430 East 86th Street | Abrams Garfinkel Margolis Bergson LLP |
| New York, NY 10028 | 1430 Broadway, 17th floor |
| Attorney for Plaintiff | New York, NY 10018 |
| Buckskin Realty Inc. | Attorney for Defendant |
| | Windmont Homeowners Association, Inc. |

Rey Olsen
41-26 27th Street, Unit 3D
Long Island City, NY 11101
Principal of Plaintiff
Buckskin Realty Inc.

NANCY HERSHEY LORD
United States Bankruptcy Judge

Plaintiff Buckskin Realty Inc. ("Buckskin"), as chapter 11 debtor-in-possession, commenced this adversary proceeding seeking, among other things, to vacate a state court judgment of foreclosure and sale of two unimproved lots located in Greene County, New York, and to avoid the transfer of those lots for the benefit of Buckskin's bankruptcy estate. This Court, by decision dated September 23, 2016, dismissed all of Buckskin's claims, except for the claim under 11 U.S.C. § 547[1] against defendant Windmont Homeowners Association, Inc. (the "WHA").

For the reasons stated herein, this Court concludes that Buckskin's claim under § 547 against the WHA cannot be determined as a matter of law, and that an evidentiary hearing is necessary to determine whether the WHA received more than it would in a hypothetical chapter 7 case.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

Unless otherwise noted, the following facts are undisputed or are matters upon which judicial notice may be taken.

Buckskin is a for-profit corporation and the successor of the sponsor of Windmont, a private, gated community located in Windham, New York. Prior to the filing of its bankruptcy

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S.C.

petition, Buckskin owned two parcels, lots 15 and 16 (the "Lots"), located within Windmont. In September 2008, the WHA filed a notice of lien against the Lots for the failure to pay common charge assessments due on the Lots (the "2008 NOL").

In July 2010, the Greene County Treasurer foreclosed on real property tax liens against the Lots and obtained title to the Lots. Buckskin repurchased the Lots from Greene County in October 2010.

In April 2011, as a result of Buckskin's failure to pay common charge assessments due on the Lots, the WHA filed two additional notices of lien ("2011 NOLs," and together with the 2008 NOL, the "NOLs") against the Lots. Buckskin alleges that the total amount of the 2011 NOLs was $17,169, inclusive of $2,000 in attorney's fees.

In August 2011, the WHA commenced a foreclosure action against Buckskin in New York State Supreme Court, Greene County (the "State Court"), seeking to foreclose on the Lots based upon the NOLs. (Margolis Decl. Ex. C at Ex. 2, ECF No. 15-4.)[2] The WHA moved for a default judgment against Buckskin when it failed to answer or otherwise respond to the action.[3] (Margolis Decl. Ex. C, ECF No. 15-4.) Buckskin's principal, Rey Olsen ("Olsen"), opposed the WHA's motion. (Margolis Decl. Ex. D, ECF No. 15-5.) On May 31, 2012, the State Court issued an order granting the WHA's motion for a default judgment. (Margolis Decl. Ex. E, ECF No. 15-6.)

On September 28, 2012, the State Court issued a judgment of foreclosure and sale in favor of the WHA against Buckskin with respect to the Lots in the amount of $56,594.21, plus

---

[2] Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 15-01004-NHL, identified by docket entry number.
[3] Buckskin based certain of its claims in this adversary proceeding on the fact that the state court action was commenced by the "Board of Directors of the Windmont Homeowners' Association, Inc. on behalf of the unit owners" rather than simply Windmont Homeowners' Association, Inc. This Court previously ruled that the fact that the WHA's name is different on the judgment is immaterial.

interest from July 23, 2012, together with costs and disbursements of $1,794.90, plus interest from September 28, 2012 (the "Judgment of Foreclosure and Sale"). (Margolis Decl. Ex. F, ECF No. 15-7; Cains Decl. Ex. 3, ECF No. 182-3.) The Judgment of Foreclosure and Sale was entered on October 12, 2012. Buckskin moved to vacate the default and the Judgment of Foreclosure and Sale, which motion was denied by the State Court on November 29, 2012. (Margolis Decl. Exs. G and H, ECF Nos. 15-8 and 15-9.)

On January 8, 2013, hours before Buckskin filed its chapter 11 bankruptcy petition, the foreclosure sale of the Lots was held, and the WHA was the successful bidder with a bid of $61,880.99. (Cains Decl. Ex. 6, ECF No. 182-6.)

Subsequently, Buckskin commenced this adversary proceeding against the WHA and other defendants. The WHA and the other defendants moved to dismiss the adversary proceeding, and Buckskin opposed the motions. By decision and order, the Court dismissed all of Buckskin's claims except the cause of action pursuant to § 547 against the WHA. The instant issue before the Court is whether Buckskin's claim under § 547 could be determined as a matter of law. The parties filed their submissions, rendering the matter *sub judice*.

## ANALYSIS

Section 547(b) governs the avoidance of preferential transfers, and provides, in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or

3

>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>    (A) the case were a case under chapter 7 of [the Bankruptcy Code];
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

11 U.S.C. § 547(b).[4]

Buckskin argues that the plaintiff/judgment creditor in the underlying foreclosure action, "The Board of Directors of the Windmont Homeowners Association, Inc. on behalf of the unit owners," is not an existing legal entity, and is different from the WHA. (Buckskin Mem. of Law at 1, 3, 4, ECF No. 181; Buckskin Reply at 4-5, ECF No. 188.) For this reason, Buckskin contends that the WHA is not a creditor or party in interest in this bankruptcy case and, because the plaintiff/judgment creditor is not an existing entity, the plaintiff/judgment creditor cannot appear in this bankruptcy case or file a proof of claim. (Buckskin Mem. of Law at 3-5, ECF No. 181; Buckskin Reply at 12-13, ECF No. 188.) Buckskin further asserts that the WHA lacked legal authority to file the NOLs or to perfect the liens, that the 2008 NOL was extinguished by Greene County's tax lien foreclosure of the Lots in 2010, and that the WHA's Declaration of Covenants (the "WHA's Declaration") violates public policy and is unenforceable against Buckskin. (Buckskin Mem. of Law at 5-8, ECF No. 181; Buckskin Reply at 11, 13, 15-16, 17-18, ECF No. 188.)

All of Buckskin's arguments with respect to the WHA's standing as a creditor and the validity of the WHA's secured claim against the Lots are barred by the Rooker-Feldman doctrine

---

[4] This section was amended effective February 19, 2020 to authorize a trustee or debtor in possession to commence an action under § 547(b) "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable defenses under subsection (c)." 11 U.S.C. § 547(b).

and by res judicata for the reasons stated in this Court's prior decisions. See Buckskin Realty, Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty, Inc.), Case No. 13-40083-nhl, Adv. Pro. No. 15-01004-NHL, 2016 WL 5360750 (Bankr. E.D.N.Y. Sept. 23, 2016); Decision Denying Reconsideration, ECF No. 131.

Buckskin also argues that the entry of the Judgment of Foreclosure and Sale is avoidable pursuant to § 547(b) because it was entered within the 90-day preference period and, upon avoidance, the WHA is rendered an unsecured creditor. Buckskin further contends that, by obtaining title to the Lots at the foreclosure sale, the WHA, as an unsecured creditor, received more than it would in a hypothetical chapter 7 case. As such, Buckskin seeks to avoid the foreclosure sale and retitle the Lots in Buckskin's name. The WHA argues that a foreclosure sale conducted pursuant to state law is unavoidable as a preference under § 547(b).

This Court now concludes that the entry of the Judgment of Foreclosure and Sale within the 90-day preference period is not avoidable under § 547(b) because it was not a transfer of Buckskin's interest in property that gave the WHA more than it would receive in a hypothetical chapter 7. This is so because the WHA was already a secured creditor at the time it commenced the foreclosure action against Buckskin pursuant to the terms of the WHA's Declaration and New York Real Property Law § 339.[5] Although it is true that, "as a matter of law, whenever a general unsecured creditor obtains, within the preference period, a judicial lien against a debtor

---

[5] A homeowners association may derive its authority to foreclose from its declaration and bylaws. See Bd. of Dirs. of House Beautiful at Woodbury Homeowners Ass'n v. Godt, 96 A.D.3d 983, 985 (N.Y. App. Div. 2d Dep't 2012). The WHA's Declaration provides that a "lien for past due Assessments may be foreclosed by the Association in accordance with the laws of the State of New York, in like manner as a mortgage on real property." (Cains Decl. Ex. 4, ECF No. 182-4.) Similarly, § 339 of New York's Condominium Act allows a condominium to foreclose liens for common charges "in like manner as a mortgage of real property." N.Y. Real Prop. Law § 339-aa. Buckskin argues that N.Y. Real Prop. Law § 339 does not apply to the WHA because the WHA is a homeowners association and is not condominium. (Buckskin Mem. of Law at 2-3, 7, ECF No. 181; Buckskin Reply at 5, ECF No. 188.) This argument was already rejected by this Court on the merits and under the Rooker-Feldman doctrine. Buckskin, 2016 WL 5360750, at *11 n.12.

who cannot fully repay his unsecured creditors, he has received a preference," Orth-O-Vision, Inc. v. Wometco Home Theatre, Inc. (In re Orth-O-Vision, Inc.), 49 B.R. 943, 945 (Bankr. E.D.N.Y. 1985), that is not the situation in this case. The WHA was not an unsecured creditor that, but for the entry of the Judgment of Foreclosure and Sale, would have had to share *pro rata* with other unsecured creditors.

Buckskin has not provided any authority to support the argument that entry of a judgment of foreclosure and sale on an existing secured claim is an avoidable preference under § 547(b). The entry of the Judgment of Foreclosure and Sale only gave the WHA the authority to foreclose on its existing secured claim and therefore did not give the WHA more than it would receive in a hypothetical chapter 7. See French v. State Farm Mut. Auto. Ins. (In re LaRotonda), 436 B.R. 491, 496 (Bankr. N.D. Ohio 2010) ("[A]ny prepetition transfer made to a secured claimant will ordinarily only provide such a creditor with consideration to which it was otherwise entitled to receive, thus negating the preferential aspect of the transfer for purposes of § 547(b)(5)."); O'Neill v. Dell (In re O'Neill), 204 B.R. 881, 892 (Bankr. E.D. Pa. 1997) ("[A] substantially oversecured creditor . . . would receive full payment in a Chapter 7 liquidation. Therefore, in order to meet its necessary burden of proving all of the elements of § 547(b), including § 547(b)(5), the [d]ebtor was obliged to prove that the defendant is either an unsecured or an undersecured creditor." (citations omitted)).

Additionally, the Court rejects Buckskin's argument that avoiding the entry of the Judgment of Foreclosure and Sale renders the WHA an unsecured creditor. (Buckskin Mem. of Law at 8; ECF No. 181.) In support of this argument, Buckskin relies on Babiker v. Citizens Contracting Co. (In re Babiker), in which debtors sought to avoid a judgment lien by arguing that "the docketing of the judgment lien elevated [the creditor] to the status of a fully secured

creditor." Babiker v. Citizens Contracting Co. (In re Babiker), 180 B.R. 458, 460 (Bankr. E.D. Va. 1995). Babiker is entirely distinguishable from the instant case because, as discussed above, the Judgment of Foreclosure and Sale did not elevate the WHA's status from unsecured creditor to secured creditor.

The avoidance of the pre-petition foreclosure sale of the Lots, however, is not as clear-cut. The WHA does not dispute that § 547(b)(1)-(4) are satisfied by the foreclosure sale. The foreclosure sale was a "transfer of an interest of the debtor in property." See 11 U.S.C. § 101(54). The transfer resulted in a benefit to the WHA and was predicated on the Judgment of Foreclosure and Sale against Buckskin on account of the antecedent secured debt Buckskin owed to the WHA. The sale occurred hours before Buckskin's bankruptcy petition was filed—well within the 90-day period—and during a time in which Buckskin's insolvency is presumed pursuant to § 547(f). 11 U.S.C. § 547(f) ("[T]he debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."). The question before the Court is whether the last element of § 547(b) is satisfied—whether the WHA received more than it would receive in a hypothetical chapter 7 liquidation when it was the successful bidder at the foreclosure sale of the Lots.[6]

The WHA urges this Court to follow the courts that have extended the Supreme Court's holding in BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), to preference claims, essentially immunizing foreclosure sales from avoidance. Buckskin argues that the sale may be avoided as a preference because the Lots are worth significantly more than the WHA's claim and, therefore, the WHA received more than it would have in a hypothetical chapter 7 liquidation.

---

[6] This Court notes that the sale has not closed and that the WHA does not yet have title to the Lots.

In BFP, the Supreme Court addressed "whether the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law conclusively satisfies the Bankruptcy Code's requirement that transfers of property by insolvent debtors within one year prior to the filing of a bankruptcy petition be in exchange for 'a reasonably equivalent value'" as required by § 548(a)(2).[7] BFP, 511 U.S. at 533. In that case, a chapter 11 debtor commenced an action pursuant to § 548(a)(2) to avoid a pre-petition foreclosure sale of real property to the successful purchaser for $433,000. Id. at 534. The debtor sought to avoid the sale as a constructively fraudulent transfer, alleging that the property was worth over $725,000 at the time of the sale. Id. The bankruptcy court ruled that the foreclosure sale could not be avoided as a constructively fraudulent transfer because the "foreclosure sale had been conducted in compliance with California law and was neither collusive nor fraudulent." Id. The bankruptcy court's decision was affirmed by the district court, the bankruptcy appellate panel, and the Court of Appeals for the Ninth Circuit. Id.

On appeal, the Supreme Court ruled that "the price in fact received at [a] foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with," constitutes "reasonably equivalent value" under § 548(a)(2), and rejected the argument that "reasonable equivalent value" means "fair market value" or "fair foreclosure price." Id. at 545. In reaching this conclusion, the Supreme Court noted that the term "fair market value" was used in §§ 346(j)(7)(B) and 522(a)(2), and that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." Id. at 537 (quoting Chicago v. Env't Def. Fund, 511 U.S. 328, 338 (1994)).[8]

---

[7] Section 548(a)(2) is now § 548(a)(1)(B)(i).
[8] Section 346(j)(7) was deleted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

8

The Supreme Court also acknowledged the reality that "market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value." Id. at 537. Put simply, "property that *must* be sold within those strictures is simply *worth less*." Id. at 539. The Supreme Court ruled that, to interpret "reasonably equivalent value" as "fair market value" would have the "profound effect" of placing "[t]he title of every piece of realty purchased at foreclosure . . . under a federally created cloud." Id. at 544.

Although § 547 does not use the term "reasonably equivalent value" found in § 548(a), some courts have applied BFP's holding and reasoning to conclude that a regularly conducted foreclosure sale cannot be avoided as a preference under § 547(b). See, e.g., In re Pulcini, 261 B.R. 836, 844 (Bankr. W.D. Pa. 2001) ("[The rationale of BFP] compels the conclusion that a pre-petition transfer of a debtor's interest in real property to a lien creditor who purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then sells the property to a third party for an amount greater than the amount of its lien is not avoidable in accordance with § 547(b) as a preference."); Newman v. FIBSA Forwarding, Inc. (In re FIBSA Forwarding, Inc.), 230 B.R. 334, 340 (Bankr. S.D. Tex. 1999)("Although the Supreme Court decision in BFP is not directly on point, it nevertheless controls this decision because its principal rationale is applicable."), aff'd, 244 B.R. 94 (S.D. Tex. 1999) ("If the price received at a foreclosure is reasonably equivalent to the value of the property sold, then parity of reasoning would suggest that such a foreclosure sale would not have the effect of 'enabl[ing] such creditor to receive more than such creditor would receive' in a chapter 7."); Cottrell v. United States (In re Cottrell), 213 B.R. 378, 383 (Bankr. M.D. Ala.1996) (finding that BFP "is equally applicable to" avoidance under §§ 547 and 548).

Other courts have held that BFP is inapplicable in the § 547 context, concluding that foreclosure sales are avoidable as preferences, even when the sale is noncollusive and otherwise compliant with state law, if it resulted in the secured creditor receiving more than it would under a chapter 7 case. See, e.g., Whittle Dev. Inc. v. Branch Banking & Tr. Co. (In re Whittle Dev., Inc.), 463 B.R. 796 (Bankr. N.D. Tex. 2011); Villarreal v. Showalter (In re Villarreal), 413 B.R. 633 (Bankr. S.D. Tex. 2009); Rambo v. Chase Manhattan Mortg. Corp. (In re Rambo), 297 B.R. 418 (Bankr. E.D. Pa. 2003); Andrews v. Norwest Bank Minn., N.A. (In re Andrews), 262 B.R. 299 (Bankr. M.D. Pa. 2001).[9]

There is no binding authority on this question in the Second Circuit. As such, after analysis of the applicable law, this Court concludes that, based upon the well-settled rules of statutory construction, a noncollusive and nonfraudulent pre-petition foreclosure sale is not, as a matter of law, immune from avoidance under § 547(b).

"It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000)). "In determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" In re Phillips, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341

---

[9] Other courts apply each factor of § 547(b), including whether the creditor received more than it would in a hypothetical chapter 7, without addressing the applicability of BFP at all. See Boberschmidt v. Society Nat'l Bank (In re Jones), 226 F.3d 917, 921–22 (7th Cir. 2000) (avoiding a pre-petition foreclosure sale where the trustee challenged the validity of the creditor's secured claim because an unsecured creditor "would be entitled to recover only its proportionate share of the proceeds along with the other creditors"); Wilson v. Wells Fargo Bank, N.A. (In re Wilson), No. 19-00504, 2020 WL 762827, at *4 (Bankr. D.D.C. Feb. 13, 2020) (dismissing a chapter 7 debtor's § 547 claim to avoid a pre-petition foreclosure sale because, among other reasons, the debtor failed to "allege[] facts showing that the sale, ratification, or payment put [the creditor] in a preferred position to other creditors by enabling [the creditor] to receive more than it would in the chapter 7 case had the sale not been held and consummated").

(1997)). See also King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." (citations omitted)). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' In such cases, the intention of the drafters, rather than the strict language, controls." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). "[W]here both the plain meaning and the rules of statutory construction are unavailing, courts may resort to legislative history to aid in their interpretation." Phillips, 485 B.R. at 56 (citing cases).

The text of § 547(b)(5) is unambiguous, and, therefore the inquiry must end. The statute requires the bankruptcy court to determine if a transfer "enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code]." 11 U.S.C. § 547(b)(5). The section "requires the [plaintiff] to construct a hypothetical chapter 7 case and determine the percentage distribution that the defendant would have received on the petition date." Sama v. Mullaney (In re Wonderwork, Inc.), 611 B.R. 169, 213 (Bankr. S.D.N.Y. 2020). This is not a question of statutory interpretation; rather, it is a mathematical calculation to determine whether the creditor received more from the transfer than it would in a chapter 7 case.

Evaluating whether § 547(b)(5) is satisfied "can often be complex, as it requires the valuation of contingent interests, causes of action, disputed claims, and other assets of the debtors that may not be subject to an easy calculation of worth." Veltre v. Fifth Third Bank (In re Veltre), No. CV 17-239, 2017 WL 3481077, at *3 (W.D. Pa. Aug. 14, 2017) (quoting Taunton v.

11

Reding (In re Taunton), 306 B.R. 1, 4 (M.D. Ala. 2004)), aff'd, 732 F. App'x 171 (3d Cir. 2018).[10] Although the ultimate determination of value in "a hypothetical chapter 7 liquidation is, by nature, 'inherently speculative' and 'is often replete with assumptions and judgments,'" In re Adelphia Commc'ns Corp., 361 B.R. 337, 366–67 (S.D.N.Y. 2007) (quoting In re Affiliated Foods, Inc., 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000) and In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 297–98 (Bankr. S.D.N.Y. 1990)), this does not lead to the conclusion that the statute itself is ambiguous or that its meaning is unclear.

BFP's holding, that "the price in fact received at [a] foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with," constitutes "reasonably equivalent value" under § 548(a) does not control the analysis under § 547(b)(5) for the simple reason that § 547(b)(5) does not use the term "reasonably equivalent value." BFP, 511 U.S. at 545. This conclusion is wholly consistent with the Supreme Court's analysis in BFP such that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." Id. at 537 (quoting Env't Def. Fund, 511 U.S. at 338). Had Congress intended § 547(b)(5) to be interpreted as "reasonably equivalent value" as used in § 548(a), it would have provided as such. See Andrews, 262 B.R. at 306 ("If Congress intended some other result, it could have used terms such as 'reasonably equivalent value' or adopted a bright line standard such as seventy percent of fair market value.").

Nor can this Court conclude that, as a matter of law, § 547(b) is inapplicable to foreclosure sales because the forced sale value at a pre-petition foreclosure is equal to, or greater

---

[10] Although Veltre held that a sheriff's sale of real property may not be avoided under § 547(b), it did so on the grounds that, "under Pennsylvania law, 'it is presumed that the price received at a duly advertised public sale is the highest and best obtainable.'" Veltre, 732 Fed. App'x at 173. The WHA has not argued that New York law has a similar presumption.

than, the sale price that would be obtained in a hypothetical chapter 7 case. In a chapter 7 case, the property would be protected by the automatic stay, affording the trustee the time to market the property. The trustee would then seek court approval to sell the property pursuant to § 363(f)(3) "free and clear of all liens if the price at which the property is sold is greater than the aggregate value of all liens." Villarreal, 413 B.R. at 639. For these reasons, "[a] chapter 7 liquidation affords the trustee the time to orchestrate an orderly sale that produces a greater value than would be received at a foreclosure sale." Id. It must be noted that the court in FIBSA Forwarding, though ultimately applying BFP to § 547 on public policy grounds, acknowledged that it "has frequently seen property bring a higher price than what is offered by the lien creditor, if the property is marketed by a trustee, with a reasonable period allowed for marketing through a real estate agent and multiple listing service." FIBSA Forwarding, 230 B.R. at 340.

The determination that noncollusive foreclosure sales conducted according to applicable state law may be subject to avoidance pursuant to § 547(b) does not yield an absurd result. Indeed, it is consistent with pre-BFP case law which "generally held that § 547(b)(5) applied to credit bids at foreclosure sales." Villarreal, 413 B.R. at 638. "If the credit bid was for less than what the property would have generated in a hypothetical chapter 7 proceeding, courts held that the creditor received 'more' than he would have in a hypothetical chapter 7 liquidation." Id. (citing cases).

Moreover, this conclusion is entirely consistent with the underlying policy considerations of § 547, including "to prevent a creditor, or creditors, from stripping the debtor of assets that could be distributed to all creditors just prior to the filing of the bankruptcy," Andrews, 262 B.R. at 304, and "to preserve the assets of the estate and promote equality of distribution among creditors of the debtor," Off. Comm. of Unsecured Creditors v. Wellner (In re Affinity Health

Care, Mgmt.), 499 B.R. 246, 266 (Bankr. D. Conn. 2013). As explained by the court in Andrews:

> This simple mathematical approach does not ignore the windfall to creditors of equity that would otherwise be distributed under the liquidation scheme of the bankruptcy code. In bringing the property back into the estate, the creditor's lien is not dissolved nor is its status as a secured creditor destroyed. It remains entitled to adequate protection and all of the other privileges and rights provided by the code to secured creditors.

Andrews, 262 B.R. at 306.

This Court is cognizant of the effect this decision may have on state foreclosure sales, such that it may create a 90-day cloud on title, which was of concern to the Supreme Court in BFP. However, it is axiomatic that Congress has the authority to interfere with state law and interests. See BFP, 511 U.S. at 543 ("Surely Congress has the power pursuant to its constitutional grant of authority over bankruptcy, U.S. Const., Art. I, § 8, cl. 4, to disrupt the ancient harmony that foreclosure law and fraudulent conveyance law, those two pillars of debtor-creditor jurisprudence, have heretofore enjoyed."). See also Balaber-Strauss v. Town of Harrison (In re Murphy), 331 B.R. 107, 116 (Bankr. S.D.N.Y. 2005) ("Congress has the power to override state foreclosure law pursuant to its constitutional grant of authority over bankruptcy." (citing BFP, 511 U.S. at 543)). "To displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest.'" BFP, 511 U.S. at 544 (citations omitted). Section 547(b)(5) is such a statute.

The conclusion that foreclosure sales may be avoidable under § 547(b) would not lead to the first instance of the Bankruptcy Code interfering with state law. Rather, there are a number of other provisions of the Bankruptcy Code that do just that. For example, valid liens may be avoided pursuant to § 506 when the claim is completely undersecured. 11 U.S.C. § 506; In re Pond, 252 F.3d 122 (2d Cir. 2001). Judicial liens may be avoided under § 522(f) to the extent

that they impair a homestead exemption. 11 U.S.C. § 522(f). A foreclosure sale that occurs in violation of the automatic stay under § 362 is "void ab initio and can be unwound." In re Ebadi, 448 B.R. 308, 317 (Bankr. E.D.N.Y. 2011).

Additionally, tax foreclosure sales or other strict foreclosure sales that lack competitive bidding may be avoided under §§ 547(b) or 548(a)(1)(B). See, e.g., Hackler v. Arianna Holdings Co. (In re Hackler), 938 F.3d 473 (3d Cir. 2019) (strict tax lien foreclosure was avoidable under § 547(b)); Hampton v. Ontario Cnty., 588 B.R. 671 (W.D.N.Y. 2018) (strict tax foreclosure sale is avoidable under § 548(a)(1)(B)); Balaber-Strauss, 331 B.R. 107 (tax foreclosure sale is avoidable under § 548(a)(1)(B)). See also In re Harris, 464 F.3d 263, 273 (2d Cir. 2006) (expressing concern in a tax foreclosure sale where the creditor obtains a windfall "at the expense of other, unsecured creditors," and noting that "the court below should be mindful that there is a strong presumption of not allowing a secured creditor to take more than its interest").

Indeed, the conclusion that a foreclosure sale may be avoided under § 547(b) is arguably less intrusive on state law than the other provisions noted above because the applicable look-back period is only 90 days.[11] Although the statute of limitations to commence an action under § 547 is governed by § 546, any party in interest would be able to determine whether the debtor filed a bankruptcy petition within 90 days of the foreclosure sale. On the other hand, the look-back period under § 548(a) is two years pursuant to 11 U.S.C. § 548(a)(1), and there is no statute of limitations or limited look-back period with respect to avoiding a lien under §§ 506 or 522(f).

---

[11] There is a one-year look-back period for transfers to insiders. 11 U.S.C. § 547(b)(4)(B).

CONCLUSION

For the foregoing reasons, this Court cannot conclude that, as a matter of law, the foreclosure sale of the Lots is not avoidable under § 547(b). Given that Buckskin and the WHA dispute the value of the Lots, it is impossible to conclude on this record whether the WHA received more from the sale than it would in a hypothetical chapter 7. This matter is scheduled for a pre-trial conference on April 6, 2021, at which the Court will establish a schedule for an evidentiary hearing on the value of the Lots.

Dated: March 26, 2021
Brooklyn, New York

Nancy Hershey Lord
United States Bankruptcy Judge